

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-8-1999

# USA v. Jacobs

Precedential or Non-Precedential:

Docket 97-5786

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"USA v. Jacobs" (1999). *1999 Decisions.* Paper 33.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/33

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 8, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-5786

UNITED STATES OF AMERICA

v.

FLOYD JACOBS,

     Appellant

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Crim. Action No. 97-cr-00343)
District Judge: Honorable Joseph A. Greenaway, Jr.

Argued September 18, 1998

BEFORE: STAPLETON and ROTH, Circuit Judges,
and HOEVELER,* Senior District Judge

(Opinion Filed February 8, 1999)

Lorraine Gauli-Rufo (Argued)
Assistant Federal Public Defender
Office of Federal Public Defender
972 Broad Street
Newark, NJ 07102

 Attorney for Appellant

_____

* Honorable William M. Hoeveler, Senior United States District Judge for
the Southern District of Florida, sitting by designation.

Faith S. Hochberg
United States Attorney
George S. Leone (Argued)
Assistant United States Attorney
970 Broad Street
Newark, NJ 07102

Norman J. Gross
Assistant United States Attorney
4th and Cooper Streets
Mitchell H. Cohen Courthouse
One John F. Gerry Plaza
Camden, NJ 08101

 Attorneys for Appellee

OPINION OF THE COURT

HOEVELER, Senior District Judge:

Floyd Jacobs appeals from a final judgment of conviction and sentence requesting that his sentence be vacated and remanded to the District Court for re-sentencing on three separate grounds. We affirm the District Court's conclusion that Jacobs is to pay full restitution to the victim under the Mandatory Victims Restitution Act, 18 U.S.C.A. S3663A. We also affirm the District Court's application of a six level enhancement pursuant to U.S.S.G. S2A2.2(b)(3)(C), Infliction of Permanent or Life-Threatening Bodily Injury. We vacate Jacobs' sentence and remand for a more detailed explanation in accordance with Third Circuit precedent as to the basis of the sentencing court's five-level upward departure pursuant to S5K2.3, Extreme Psychological Injury.

I.

Appellant was charged with aggravated assault on his former girlfriend, Rebecca West, on federal property in violation of 18 U.S.C. S113(a)(3). Jacobs pled guilty to the charge on June 17, 1997.

2

The written plea agreement contained the following stipulations: (1) the applicable Sentencing Guideline was U.S.S.G. S2A2.2, which provides a base offense level of 15; (2) a dangerous weapon was used during the assault requiring an upward adjustment of 4 points appropriate pursuant to U.S.S.G. S2A2.2(b)(2)(B); and (3) since Jacobs pled guilty on a timely basis and therefore accepted responsibility for his crime, he was entitled to a downward adjustment of 3 points, pursuant to U.S.S.G. S3E1.1(a) and (b)(2). After an evidentiary hearing on the degree of injury Jacobs inflicted upon the victim for the specific offense characteristic under S2A2.2, the Court found that the victim had sustained "permanent or life-threatening bodily injury" and applied the six level upward adjustment under U.S.S.G. S2A2.2(b)(3)(C). Therefore, based upon an Offense Level of 22 and a Criminal History Category of II, the Guidelines range was 46-57 months. The Court then informed the parties before the sentencing that it would entertain a motion for an upward departure pursuant to U.S.S.G. S5K2.3 regarding infliction of "extreme psychological injury" upon the victim. After a review of treatment and examination records by various mental health professionals, the Court found that Jacobs had inflicted extreme psychological injury upon the victim, and thus departed five levels above the adjusted offense level. Thus, the total offense level became 27 with a Guidelines range of 78-97 months. Jacobs was sentenced to a 96 month term of imprisonment. Appellant's Appendix at 57-69. An evidentiary hearing was held regarding restitution wherein Jacobs was ordered to pay the full amount of monetary damages suffered by the victim and her health insurance carrier in the amount of $27,470.17. Appellant's Appendix at 74-123. Jacobs filed this appeal on November 26, 1997, and on September 18, 1998 this Court heard oral argument.

In his appeal, Jacobs makes three arguments. First, he contends that the District Court erred in imposing a six level enhancement pursuant to U.S.S.G. S2A2.2(b)(3)(C), infliction of permanent or life-threatening injury. Second, he asserts that the Court erred in upwardly departing five levels and that the Court also erred on the degree of the departure due to insufficient findings that Jacobs had

3

inflicted "extreme psychological injury" upon the victim. Third, he argues that the Court should not have ordered him to pay full restitution pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. S3663A.

The government responds that the court properly concluded that a six level enhancement was warranted on the basis of findings that Jacobs had indeed inflicted permanent bodily injury and life threatening injury, the prerequisites for imposing an enhanced penalty under S2A2.2(b)(3)(C). The government also argues that there was more than enough evidence on record that Jacobs' assault had caused the victim extreme psychological injury. Finally, the government asserts that the District Court committed no error in awarding restitution, as the statute clearly mandates full restitution.

II.

A.

The first questions with which this Court is faced are Jacobs' contentions that an award of full restitution to the victim was not warranted in his case, and his argument that the amount of restitution that represented lost wages was awarded in error because West had been fully paid by her employer for time off from work. There can be little said about these arguments since the statute at issue is clear and straightforward. Plenary review is the standard for the determination that the restitution award is permitted, while the amount of the particular award is reviewed for clear error, as it rests on the facts of the particular case. United States v. Hunter, 52 F.3d 489, 493 (3d Cir. 1995). Upon consideration of the record and with the benefit of oral argument, we affirm the judgment of the District Court that Jacobs pay full restitution to the victim in the amount of $27,470.17.

On the first point, Jacobs argues that the Mandatory Victims Restitution Act, 18 U.S.C.A. S3663A (MVRA), is susceptible to an interpretation which would have permitted the trial court in his case to consider awarding partial restitution instead of the full restitution that was

4

awarded against him.1 Jacobs represented at a restitution hearing that this partial restitution argument was one of first impression, but the trial court apparently did not consider it and awarded full restitution. We find that the District Court did not abuse its discretion in determining that this case was appropriate for a restitution remedy, and also correctly interpreted the statute as mandating full restitution, an interpretation that is in line with the plain language of the statute and also with several opinions on the subject by other courts. United States v. Duncan, 1998 WL 558756 at *1 (4th Cir. 1998); United States v. Juvenile G.Z., 144 F.3d 1148 (8th Cir. 1998); United States v. Baggett, 125 F.3d 1319, 1322 (9th Cir. 1997); United States v. Siegel, 153 F.3d 1256, 1260 (11th Cir. 1998).

Section 3663A(a)(1) states in relevant part, "[n]otwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order ... that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate." Jacobs' offense clearly falls within subsection (c)(1)(B); an identifiable victim or victims has suffered a physical injury or pecuniary loss. Most importantly, companion S3664 -- Procedure for issuance and enforcement of order of restitution-- clearly mandates full restitution in subsection (f)(1)(A):"[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." Emphasis added. These two sections were 1996 amendments to the MVRA and most telling, subsection (f)(1)(A) replaced deleted subsection (a), which had required the sentencing court to consider the financial resources and needs of the defendant.

Although Jacobs makes some interesting statutory construction arguments, they simply cannot override the

_____

1. Jacobs' argument, that since S3664(a) requires the defendant to provide the probation department with an affidavit identifying his resources his financial circumstances must be taken into consideration, is without merit given the clear language in the MVRA to the contrary.

5

clear and unambiguous mandatory language of the MVRA, especially in light of the fact that the recent amendments to the MVRA squarely defeat his arguments. Moreover, at least four other circuits have also found that the MVRA is a mandate requiring full restitution for certain crimes (see cases listed above). The Court finds that the District Court did not abuse it discretion in awarding full restitution to the victim.

B.

Jacobs' second argument is that the District Court erred in finding that lost "annual leave" and "restored leave" which West had to expend when her sick leave was exhausted were "lost wages" under the MVRA. This argument is based on the fact that West was paid by her employer during her leave. However, the District Court accepted evidence that had West not been forced to expend annual and restored leave, she would have been entitled to a lump-sum cash payment for any unused leave in the event of resignation or retirement as a federal employee pursuant to 5 U.S.C. S5551.

Whether or not the economic loss occasioned by the loss of annual and restored leave is properly termed"lost wages" as it was occasionally referred to at both hearings on restitution is not important to this Court's conclusion that the District Court was correct in concluding that such loss was a proper component of the restitution award. The applicable section of the MVRA is S3663A(b)(2)(C) which states in relevant part that "[t]he order of restitution shall require that such defendant, in the case of an offense resulting in bodily injury to the victim, reimburse the victim for income lost by such victim as a result of such offense." Since the District Court concluded that West would have been entitled to a lump sum payment had she not had to use her annual and restored leave, the District Court made sufficient findings that the income in the form of a future lump sum payment to be made was lost as a result of Jacobs' offense.

Finally, Jacobs argues that even if the annual and restored leave are properly part of the restitution

6

calculation, the dollar value per day of this leave attributable to his crime was not proven by a preponderance of the evidence. We will not disturb the District Court's findings that the dollar value of these two types of leave, along with all other types of pecuniary losses for which restitution was ordered, were caused by Jacobs' assault. The District Court had before it numerous records from treating physicians, the victim's insurer, the victim's employer, and the Department of the Army, establishing the number of months the victim was unable to work, the dollar amount of medical services for the victim, and the amount of annual, unpaid, and restored leave that the victim lost while recuperating from her injuries. From this evidence, the District Court made findings that the amounts were accurate and found as a fact that the government had sustained its burden under the MVRA of proving by a preponderance of the evidence that Jacobs' assault upon the victim was the cause of these losses. Appellant's Appendix at 88, 108–111. Moreover, the government correctly points out that no contrary evidence regarding the amounts or the items considered in the restitution calculation was presented. The District Court's conclusions as to amount and causation of loss were a proper exercise of discretion.

III.

The second question we must address is Jacobs' contention that the sentencing court erred in applying a six level enhancement pursuant to U.S.S.G. S2A2.2(b)(3)(C), which provides for a six level enhancement if a victim suffers permanent or life threatening injury from an aggravated assault. The standard of review for the District Court's interpretation and application of the Guidelines is plenary. United States v. Felton, 55 F.3d 861, 864 (3d Cir. 1995). The victim here clearly suffered bodily injury as a result of stab wounds, and thus the application of S2A2.2(b)(3) was appropriate. However, we must determine whether the District Court made sufficient factualfindings to support a specific offense characteristic enhancement of six levels, the highest increase available underS2A2.2(b)(3). See United States v. Fiorelli, 133 F.3d 218, 220 (3d Cir.

7

1998) (citing with approval District Court's specific findings justifying increase). Factual findings in relation to sentencing issues are reviewed for clear error. Felton, 55 F.3d at 864.

Application Note 1(h) of U.S.S.G. S1B1.1 defines "permanent or life-threatening bodily injury" as "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." While Jacobs in fact admits that some increase for bodily injury was warranted in this case, he asserts that S2A2.2(b)(C)(3) contemplates more serious injures than West suffered when referring to "permanent bodily injury" and that West's injuries were less serious than the District Court determined. He also argues that there was insufficient evidence to find that the assault involved a "substantial risk of death." This is simply not the case.

After accepting evidence, conducting hearings, and hearing argument, the District Court adopted express findings (1) that the elevated and prominent scar on the victim's face was an obvious disfigurement that is likely to be permanent, Appellant's Appendix at 23; (2) that Jacobs had inflicted injuries that left permanent scars all over the victim's body, Appellant's Appendix at 68; and (3) that the stabbing to the victim's face, mouth, chest, back and abdomen involved a substantial risk of death, Appellant's Appendix at 23-24.2 Moreover, the District Court also found at the later hearing on the restitution issue that Jacobs' assault upon the victim had caused an intestinal obstruction requiring emergency surgery (a colostomy), in accordance with the operating physician's conclusions.3

_____

2. Jacobs argues that the District Court "specifically decided not to consider the medical reports regarding Ms. West" which categorized her injuries as "superficial" and "non-penetrating." This Court finds that the record does not support this allegation, and in any event, the point is meritless since the sentencing court made findings of fact for the six level increase on two separate grounds, i.e., that the injuries were permanent and life-threatening.

3. The sentencing court did not commit error in refraining from crediting Jacobs' speculative efforts, without any expert support, to present other possible causes for the intestinal obstruction.

8

Appellant's Appendix at 77-81. These findings comport with the definition of "permanent or life-threatening bodily injury" found in Application Note 1(h) of U.S.S.G. S1B1.1. Moreover, since S2A2.2(b)(3)(C) is phrased in the disjunctive, a finding of either permanent bodily injury or life-threatening injury would have sufficed to bring Jacobs' conduct within the guidelines section. The district judge thus found that the facts supported both alternatives for applicability of the section, when facts supporting either one would have been adequate. The fact that there are cases that have found other, arguably more severe, injuries as permanent or life threatening bodily injuries under S2A2.2(b)(3)(C) is of no moment given the District Court's findings in this case and this Court's independent review of the record.

Having already concluded that application of S2A2.2(b)(3) was appropriate, we find that the District Court sufficiently and adequately stated a factual basis for the finding of permanent or life-threatening injury justifying a six level enhancement. There was no clear error that would justify disturbing the sentencing court's conclusions.

IV.

The final issue Jacobs argues on appeal is that the District Court improperly departed five levels pursuant to U.S.S.G. S5K2.3, based on a finding that Jacobs inflicted "extreme psychological injury" upon the victim.4 We review

_____

4. Section 5K2.3, "Extreme Psychological Injury (Policy Statement)" states in relevant part that:

> If a victim or victims suffered psychological injury much more
> serious than that normally resulting from commission of the
offense,
> the court may increase the sentence above the authorized guideline
> range. The extent of the increase ordinarily should depend on the
> severity of the psychological injury and the extent to which the
> injury was intended or knowingly risked.

> Normally, psychological injury would be sufficiently severe to
> warrant application of this adjustment only when there is a
> substantial impairment of the intellectual, psychological,
emotional,
> or behavioral functioning of a victim, when the impairment is
likely

9

a District Court's decision to depart from the guidelines for abuse of discretion. United States v. Baird, 109 F.3d 856, 862 (3d Cir. 1997).5 We find that the sentencing judge did not make the specific factual findings required for an appropriate departure based on "extreme psychological injury" resulting to the victim from Jacobs' assault. We also find Jacobs' argument that the district judge should have specifically articulated the reasons for the degree of the departure convincing. Under this Circuit's precedent of United States v. Kikumura, 918 F.2d 1084 (3d Cir. 1990), we must conclude that the district judge did not engage in the analogic reasoning that is required in arriving at a five level departure, as opposed to some other numerical level of departure. We therefore vacate the sentence on these two separate but related grounds and remand for re-sentencing in accordance with the discussion of Third Circuit precedent below.

As we stated in Baird, S5K2.0, Grounds for Departure, provides a roadmap for a decision to depart from the applicable Guidelines range. Baird, 109 F.3d at 870-71. A court may depart from the range if it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. S3553(b); 1997 U.S.S.G. S5K2.0. "Sentencing courts are not left adrift, however." United States v. Koon, 518 U.S. 81, 94 (1996). Factors that are encouraged as bases for departures are found in SS 5K2.1-5K2.18. One such encouraged factor is an upward departure based on a finding of "extreme psychological injury" to the victim. U.S.S.G. S5K2.3.

_____

to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns. The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct.

5. We note that facts relevant to the departure in this case generally need be proven only by a preponderance of the evidence. Baird, 109 F.3d at 865 n.8 (five-level departure is not extreme enough to require proof by the clear and convincing standard).

10

Section 5K2.3 is entitled "Extreme Psychological Injury."
It provides the following authority:

> If a victim or victims suffered psychological injury
> much more serious than that normally resulting from
> commission of the offense, the court may increase the
> sentence above the authorized guideline range.

Thus, a court invoking the authority of S5K2.3 must find
that a victim suffered psychological injury "much more
serious than that normally resulting from the commission
of the [particular] offense" for which the defendant is being
sentenced. United States v. Neadle, 72 F.3d 1104, 1111-12
(3d Cir. 1996) (the record must support a finding that "the
victims suffered psychological . . . harm, which exceeded
that occurring in the heartland of fraud offenses, to such a
degree as to justify an upward departure."); United States v.
Astorri, 923 F.2d 1052, 1059 (3d Cir. 1991) ("The evidence
supports the District Court's findings that [the defendant's]
victims suffered much more psychological injury than that
normally resulting from the commission of a wire fraud
offense."). See also, United States v. Zamarripa, 905 F.2d
337, 340 (10th Cir. 1990) (holding that the record did not
support departure because the state's therapist was unable
to say that the eight-year-old sexual abuse victim suffered
greater than normal psychological harm); United States v.
Luscier, 983 F.2d 1507, 1513 (9th Cir. 1993) (evidence did
not support departure in light of expert's testimony that the
victim suffered a normal psychological reaction to
attempted stabbing, and to the fatal stabbing of the victim's
aunt); United States v. Fawbush, 946 F.2d 584, 586 (8th
Cir. 1991) (despite the Presentence Report's assertion of
greater than normal psychological harm to a sexual abuse
victim of tender age, the evidence did not show that "either
victim suffered psychological harm greater than that
normally resulting from sexual abuse"); and United States
v. Bond, 22 F.3d 662, 671-72 (6th Cir. 1994) (upward
departure unwarranted because the bank tellers' anxiety
after robbery was not sufficiently unusual).

The District Court in this case found that the victim was
suffering from "posttraumatic stress disorder, from mood
disorders, from depression, anxiety, sleeplessness."
Appellant's Appendix at 57-8. It further concluded that her

11

condition constituted "a substantial impairment of her psychological emotional function," that this"impairment will be of an extended and continuous duration," and that this "impairment manifests itself by physical or psychological symptoms or changes in behavioral pattern" (i.e., anxiety, depression, sleeplessness). Appellant's Appendix at 58. The District Court did not , however, find that the victim's psychological injury was "much more serious than that normally resulting from the commission" of the crime of aggravated assault. Nor is such afinding compelled by the current record.6 Such a finding is a prerequisite for a departure under SK2.3.

Apparently, the District Court focused its attention on the following portion of S5K2.3 that explains the types of situations in which the authority provided in the initial, above-quoted sentence of S5K2.3 may be found to exist:

> Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns.

The District Court may have viewed this sentence as providing a definition of, and thus a substitute for, the requirement that there be "psychological injury much more serious than that normally resulting from commission of the offense." This view is inconsistent with the text. It is apparent from the phrase "only when" that this explanatory sentence is intended to provide a presumptive floor for the operation of S5K2.3. The situation normally should at least involve a substantial impairment, an extended or

_____

6. The District Court stated that it found "nothing ordinary about this particular assault" and that the "psychological injury suffered is extreme." Appellant's Appendix at 59. However, these statements alone do not allow for the conclusion that the harm suffered is above the level of, or more serious than that normally experienced by a victim of an aggravated assault.

continuous duration, and a manifestation of symptoms before the court should consider applying S5K2.3. Conversely, the "only when" of this explanatory sentence also implies that there will be cases in which these three factors will be present and the court will nonetheless be unable to find that the psychological injuries are "much more serious than those normally resulting from the commission of the offense." Because the explanatory sentence relied upon by the District Court is not a surrogate for a finding of injury beyond the heartland of injuries from the same offense, the findings of the sentencing court do not support its upward departure.

In addition, we must be satisfied that the extent of the departure was reasonable, judged against the objective standards of the Guidelines themselves. Kikumura, 918 F.2d at 1110; Baird, 109 F.3d at 872. Having first determined the appropriateness of a S5K2.3 departure by engaging in the required factual analysis, the Guidelines must then be examined to determine the extent of the departure. The District Court must undertake the "analogic reasoning" that Kikumura often requires. Baird, 109 F.3d at 872. This analogic reasoning consists of fixing the extent of the departure by reference to an applicable counterpart in the Guidelines. United States v. Lieberman, 971 F.2d 989, 999 (3d Cir. 1992). When departure by analogy is appropriate, the District Court should "ordinarily do so only to the extent of the most nearly analogous Guideline." United States v. Bierley, 922 F.2d 1061, 1069 (3d Cir. 1990).7 We note however, that analogies to the Guidelines, as opposed to applications of the Guidelines, are "necessarily more open-textured." Kikumura, 918 F.2d at 1113.

The District Court on remand may find helpful guidance in S2.2A2(b) of the aggravated assault guideline. That section provides in part:

> (b) Specific Offense Characteristics
>
> ***

_____

7. We note our statement in Kikumura that the development of vehicles by the district courts other than analogy to a Guidelines section is not foreclosed. Kikumura, 918 F.2d at 1113.

13

        (2) (A) If a firearm was discharged, increase by 5
            levels; (B) if a dangerous weapon (including a
            firearm) was otherwise used, increase by 4 levels;
            (C) if a dangerous weapon (including a firearm)
            was brandished or its use was threatened,
            increase by 3 levels.

        (3) If the victim sustained bodily injury, increase the
            offense level according to the seriousness of the
            injury:

          Degree of Bodily Injury          Increase in Level

        (A) Bodily Injury                          add 2
        (B) Serious Bodily Injury                  add 4
        (C) Permanent or Life-threatening
        Bodily Injury                              add 6

        (D) If the degree of injury is between that specified
            in subdivisions (A) and (B), add 3 levels; or

        (E) If the degree of injury is between that specified
            in subdivision (B) and (C), add 5 levels.

        Provided, however, that the cumulative adjustments
        from (2) and (3) shall not exceed 9 levels.[8]

Under S1B1.1(j), "serious bodily injury" includes the
"protracted impairment of . . . [a] mental faculty." Under
S1B1.1(h), "permanent or life-threatening bodily injury"
includes a "substantial impairment of [a] mental faculty
that is likely to be permanent." These definitions do not, as
Jacobs argues, mean that in an aggravated assault context,
S2A2.2(b) takes into account all of the extraordinary

_____

8. While the discussion above relates to the analogic reasoning required
for a finding of extreme psychological injury and because this cause is
being remanded for findings consistent with our views, we note in
passing an apparent problem that exists with the sentence imposed
pursuant to the aggravated assault guideline. The district court imposed
a four level enhancement under (b)(2) based on the use of a knife and a
six level enhancement under (b)(3) based on the physical injury to the
victim. This would appear to be inconsistent with the nine level cap
imposed in the concluding sentence of (b)(3). No one raised this issue on
appeal, but in view of the remand, we felt this observation was
appropriate.

psychological injuries covered by S5K2.3.9 They may, however, provide a basis for inferring that the guidelines in an aggravated assault situation treat physical and non-physical injuries to a victim as being of substantially similar seriousness. If one draws such an inference, one may further conclude that it would be inconsistent with the approach of the Guidelines to depart upward four levels or more under S5K2.3 without finding that the extreme psychological injury was likely to be protracted. Conversely, one may conclude that it would be consistent with the approach of the Guidelines to depart upwards four levels if there is "extreme psychological injury," as defined in S5K2.3, that can be expected to be "protracted" but not "permanent."

While we share these observations about a possible application of Kikumura in the context of this case, we would not, of course, confine the District Court to this approach.

V.

Upon consideration of the record and with the benefit of oral argument, we vacate the sentence to the extent described above. The matter shall be remanded to the District Court for re-sentencing in accordance with the discussion of Third Circuit precedent referred to herein.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

9. Even if it did, there would be no double counting here as Jacobs suggests, because the six level enhancement invoked by the District Court under S2A2.2(b)(3)(C) was based solely on the physical injuries of the victim.

15