UNITED STATES of America,
Appellee,

v.

Antonio LASAGA, Defendant–
Appellant.

Docket No. 02–1144.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 10, 2003.

Decided: May 2, 2003.

John A. Danaher, III, United States Attorney, District of Connecticut, New Haven, Connecticut (Kari A. Dooley, Jeffrey A. Meyer, William J. Nardini, Assistant

United States Attorneys, on brief), for Appellee.

Diane Polan, Law Offices of Diane Polan, L.L.C., New Haven, Connecticut, for Appellant.

Before: F.I. PARKER, STRAUB, SACK, Circuit Judges.

F.I. PARKER, Circuit Judge.

Defendant–Appellant Antonio Lasaga appeals from a conviction and sentence entered in the United States District Court for the District of Connecticut (Alvin W. Thompson, *Judge*), following a guilty plea to one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Lasaga was sentenced principally to 180 months' imprisonment on the receipt of pornography count, and 60 months' imprisonment on the possession of pornography count, to be served concurrently. On appeal, Lasaga argues that this court should vacate his conviction on the possession count on the grounds that the enactment of 18 U.S.C. § 2252A(a)(5)(B) exceeded Congress' power under the Commerce Clause. Lasaga also argues that this court should remand for re-sentencing because the district court erred by (1) departing upward under U.S.S.G. § 5K2.3, and (2) departing upward on the basis of the large quantity of child pornography defendant received.

## I.

After being notified by defendant's employer that defendant was downloading child pornography on the employer's computer, federal law enforcement agents searched defendant's home, seizing more than 200 "Zip" disks, a computer hard drive, and other diskettes containing images of minors posed in the nude or engaged in various sexual acts. The agents also seized two videotapes depicting sexually explicit conduct involving a young boy whom Lasaga had mentored since the boy was seven years of age. Subsequently, the boy was interviewed and described sexual abuse by the defendant beginning at the age of 11 or 12.

On June 17, 1999, Lasaga was indicted on four counts of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and three counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5). On February 18, 2000, defendant pled guilty to Counts Two and Six of the Indictment. Count Two charged that on or about November 1, 1998 defendant knowingly received "numerous graphic image files" of child pornography in violation of 18 U.S.C. § 2252A(a)(2). Count Six charged that on or about November 6, 1998, defendant knowingly possessed "two video tapes containing images of child pornography," in violation of § 2252A(a)(5).

On March 18, 2000, an initial sentencing hearing was held at which defendant moved to withdraw his guilty plea to Count Six and to dismiss that Count on the theory that § 2252A(a)(5)(B) unconstitutionally exceeded Congress's power under the Commerce Clause. Three days before the hearing, the United States Supreme Court had invalidated a statute on that theory in the landmark case of *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). After further briefing on defendant's motion, the district court elected to reserve judgment pending this court's resolution of a similar Commerce Clause challenge in *United States v. Griffith*, 284 F.3d 338 (2d Cir.2002), *cert. denied*, — U.S. —, 123 S.Ct. 461, 154 L.Ed.2d 352 (2002).

However, after the motion had been pending for more than a year, defendant

moved on January 7, 2002 to withdraw his challenge and requested that the court proceed to sentencing. He did so in order to obtain a deal in a related state court proceeding that required him to be sentenced in federal court first. To withdraw his motion, defendant signed a document entitled "Waiver of Right to Prosecute Motion to Dismiss and to Withdraw Guilty Plea."

On February 12, 2002, the district court conducted another sentencing hearing, and Lasaga was sentenced on the following day. The government recommended an offense level of 33, subject to the upward departures then sought. Lasaga challenged his presentence report, seeking a "grouping" of offenses, which the government had not done. The district court ultimately ruled that the sentences should be grouped, thereby reducing the adjusted offense level to 31. The court then made two upward adjustments, resulting in an adjusted offense level of 34. First, the district court departed upward two levels based on the quantity of child pornography in Lasaga's possession. Second, the district court departed upward one level under U.S.S.G. § 5K2.3, which allows for upward departure where a victim "suffered psychological injury much more serious than that normally resulting from commission of the offense." The district court then chose to sentence Lasaga "near the top of the range", imposing a sentence of 180 months' imprisonment on the receipt of pornography count, and a concurrent sentence of 60 months' imprisonment on the possession of pornography count. The district court stated that it believed that it would have sentenced Lasaga to the same amount of imprisonment even if the conviction on the possession count had been struck down as unconstitutional.[1]

Defendant-appellant now appeals his conviction on Count Six, and both upward departures.

## II.

### A. *Defendant's argument that his conviction is unconstitutional*

Defendant has waived his argument that his conviction was unconstitutional. A defendant who pleads guilty unconditionally admits all elements of the formal charge and, in the absence of court-approved reservation of issues for appeal, waives all challenges to prosecution except those going to the court's jurisdiction. *United States v. Maher*, 108 F.3d 1513, 1528 (2d Cir.1997); *United States v. Coffin*, 76 F.3d 494, 496 (2d Cir.1996); *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir.1987).

Here defendant did not reserve the right to appeal, and his Commerce Clause attack is non-jurisdictional in nature. *See United States v. Carr*, 271 F.3d 172, 178 (4th Cir.2001); *United States v. Riddle*, 249 F.3d 529, 535–36 (6th Cir.2001); *United States v. Beck*, 250 F.3d 1163, 1167 (8th Cir.2001); *United States v. Martin*, 147 F.3d 529, 531–32 (7th Cir.1998); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (defining jurisdiction as a court's statutory or constitutional power to adjudicate a case). Indeed, this court has explained that "[i]n order to sustain a challenge to the district court's jurisdiction, the defendant who has pleaded guilty must establish that the face of the indictment discloses that the count or counts to which he pleaded guilty failed to charge a federal offense." *Hayle*, 815 F.2d at 881. Lasaga's indictment, by contrast, charged him with violating a specific criminal stat-

---

1. Defendant notes, however, that this court cannot determine whether such a sentence would have been proper without undertaking a separate Guideline analysis.

ute. Accordingly, by pleading guilty unconditionally, defendant waived his right to challenge the constitutionality of § 18 U.S.C. § 2252A(a)(5)(B). Therefore, defendant's argument that his withdrawal of his motion to withdraw his guilty plea to Count Six and to dismiss that Count should not be construed as a waiver of his right to challenge the constitutionality of § 18 U.S.C. § 2252A(a)(5)(B) is unavailing because, by pleading guilty, he had already waived that right.[2]

B. *Defendant's argument that the district court erred in granting upward departures*

Appellant's right to appeal his sentence is governed by 18 U.S.C. § 3742(a), which permits appellate review of a sentence if it is: 1) "imposed in violation of law"; 2) "imposed as a result of an incorrect application of the sentencing guidelines"; 3) "greater than the sentence specified in the applicable guideline range . . ."; or 4) "imposed for an offense for which there is no sentencing guideline and is plainly unreasonable."

1. Departure under § 5K3.2

■ The district court erred in departing upward under U.S.S.G. § 5K2.3 without finding that the harm to the victim was much more serious than that normally resulting from the underlying offense. U.S.S.G. § 5K2.3 states that:

If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.

Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns. The court should consider the extent to

---

2. Lasaga explains that he withdrew his motion and pleaded guilty in federal court in order to obtain a state plea deal which required him to be sentenced first in federal court. He contends that the trial court's significant delay in ruling on his motion put him in a position where he was forced to choose between pursuing that motion and the state plea bargain and, therefore, it would be unconscionable for this court to conclude that he had waived his constitutional challenge. While Lasaga was faced with a difficult choice, his predicament does not affect our determination that he waived his challenge because it in no way suggests that his original guilty plea was flawed. A defendant does not have an absolute right to withdraw a guilty plea, and " '[t]he fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a

sufficient reason to permit withdrawal of a plea' ". *United States v. Grimes*, 225 F.3d 254, 259 (2d Cir.2000) (*per curiam*) (quoting *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992)); *see also United States v. Maher*, 108 F.3d 1513, 1528–29 (2d Cir.1997) ("a defendant who pleads guilty unconditionally admits his guilt and waives his right to appeal all nonjurisdictional contentions" although he "retains the right to contend that there were errors in the proceedings that led to the acceptance of his plea of guilty, and he may argue that the district court failed to comply with Rule 11(f)'s requirement that the court be satisfied 'that there is a factual basis for the plea' "). Defendant does not allege, and there is no reason for this court to suspect, that he did not fully understand the charges against him or that his guilty plea was not voluntary.

which such harm was likely, given the nature of the defendant's conduct.

Lasaga argues that each of the above paragraphs sets forth a separate prong of the test for an upward departure under § 5K2.3. The government, by contrast, portrays the second paragraph as a set of "factors" that a district court should use to determine whether application of the guideline is appropriate. The district court also appears to have understood the second paragraph to identify factors which lead to the inference that an injury is "much more serious than that normally resulting from commission of the offense."

In *United States v. Mandel,* 991 F.2d 55 (2d Cir.1993), we explained that the second paragraph of § 5K2.3 articulates an additional requirement:

> An upward departure based on psychological injury is appropriate only when the injury is "much more serious than that normally resulting from commission of the offense," U.S.S.G. § 5K2.3, *and* "only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns."

*Id.* at 58 (emphasis added). Similarly, the Third Circuit has concluded that the second paragraph articulates "a presumptive floor for the operation of § 5K2.3," and thus, an additional requirement to the "much more serious than ... normal[ ]" requirement of the first paragraph. *United States v. Jacobs,* 167 F.3d 792, 800 (3d Cir.1999).

However, in *United States v. Morrison,* 153 F.3d 34 (2d Cir.1998), we read the second paragraph as exemplary:

The district court based its findings of extreme behavior and extreme psychological injury in large part upon its observation of the "extreme pain, anxiety and terror [of victims who] testified at trial." The Guidelines permit an upward departure on the ground of extreme psychological injury when the injury was "much more serious than that normally resulting from commission of the offense;" *for example,* "when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms ,or by changes in behavior patterns."

*Id.* at 52–53 (quoting U.S.S.G. § 5K2.3) (emphasis added). Similarly, the Seventh Circuit has read the first sentence of the second paragraph as an "explanatory provision" that "explain[s] when psychological harm is sufficiently severe to take a case out of the heartland." *United States v. Oliver,* 118 F.3d 562, 567 (7th Cir.1997).

The wording of *Morrison* might thus suggest that this court considers the second paragraph of § 5K2.3 to be an explanatory provision. However, as the *Morrison* court discussed, the district court had found that the harm to the victims was greater than that anticipated by the drafters of the Sentencing Guidelines, and that the psychological harm to the victims "exceeded what would normally be expected for the crimes charged." *Morrison,* 153 F.3d at 53–54. Thus, unlike the district court in the case at hand, the district court in *Morrison* did not merely rely on a finding that the factors listed in paragraph 2 existed. Rather, that court determined both that the factors mentioned in paragraph 2 existed and that the basic standard set forth in paragraph 1 was met.

Moreover, the approach of *Mandel* is more consistent with the text of § 5K2.3. In the second paragraph of § 5K2.3, the phrase "only when" implies that what follows narrows, rather than exemplifies, the limited circumstances in which the guideline can be met. Thus, as Lasaga argues, the guideline sets forth a two-part test. However, the word "[n]ormally" at the beginning of the second paragraph indicates that it is not a strict two-part test. "Normally" suggests typicality, not an additional, conjunctive requirement and thus establishes a "presumptive floor" for the guideline. District courts should begin by asking whether the factors set out in the first sentence of paragraph two are met— *i.e.*, whether one of the named areas of functioning is substantially impaired, for a long period of time, and in a symptomatic way—because there is a presumption that the guideline applies only when those factors are met. If the factors are not met, then typically the guideline is not applicable. The word "[n]ormally" would allow a court, in an unusual situation, however, to apply the guideline even when none of the factors are met. The court would presumably need to make it clear why that case presents an "abnormal" situation.

Accordingly, if the district court finds that the factors in the second paragraph are met, the court must then also satisfy itself that the basic standard set out in the first sentence of the first paragraph is met: that the injury is "much more serious than that normally resulting from commission of the offense." In short, § 5K2.3 requires a finding of comparatively greater harm, relative to a "normal" or "typical" injury of the type enumerated in the guideline.

Here, however, the district court decided to depart under § 5K2.3 because it conclude[d] that the government has demonstrated that an upward departure on this basis is appropriate because it has shown that the psychological injury suffered by the victim was a substantial impairment of the psychological and emotional functioning of the victim which manifested itself by changes in behavior patterns and which is likely to be of an extended or continuous duration.

Thus, the district court did not find that the injury suffered by the victim was any more serious than that normally resulting from the crime, let alone "much more" serious as § 5K2.3 explicitly requires. The district court merely found that it had resulted in a "substantial impairment." One would expect, however, that any child who is sexually abused and used to produce child pornography would suffer substantial impairment.[3] Indeed, child pornography can be proscribed even when it is not obscene solely because of the state's interest in protecting the children harmed in its production. *See generally Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). Moreover, we have previously explained that the mere finding of psychological injury is not sufficient to warrant a § 5K2.3 departure. *See United States v. Mandel*, 991 F.2d 55 (2d Cir.1993).

Accordingly, the district court erred in departing under § 5K2.3 without making the additional finding that the victim suffered much more serious harm than would normally be the case. *See United States v. Jacobs*, 167 F.3d 792, 799–800 (3d Cir. 1999) (remanding for resentencing where the district court only found that the vic-

---

**3.** It is appropriate to consider the sexual abuse when applying this ground for departure because § 5K2.3 addresses "the offense,"

meaning "the offense of conviction and all relevant conduct." *See* U.S.S.G. § 1B1.1, Commentary n. 1(k).

tim suffered "a substantial impairment" because a finding that injury was "much more serious than that normally resulting" from the offense in question is "a prerequisite for departure under § 5K2.3"); *United States v. Bond*, 22 F.3d 662, 671–72 (6th Cir.1994) (upward departure not warranted because the victims' anxiety following a robbery was not sufficiently unusual); *United States v. Luscier*, 983 F.2d 1507, 1513 (9th Cir.1993) (evidence did not support a departure under § 5K2.3 in light of the expert's testimony that the victims suffered normal psychological reactions); *United States v. Fawbush*, 946 F.2d 584, 586–7 (8th Cir.1991) (evidence that a victim was in therapy and testimony that the psychological impact of sexual abuse is greater on young victims did not warrant departure under § 5K2.3 because it did not show that the victims suffered psychological harm greater than that normally resulting from sexual abuse); *United States v. Zamarripa*, 905 F.2d 337, 341 (10th Cir.1990) (upward departure not warranted where "the parties stipulated the therapist was unable to state that the harm to the victim was greater than normal" and a careful review of the presentence report "adds nothing to support a finding of unusual psychological injury").[4]

We note that the evidence in the record as to the victim's harm is not sufficient for us to conclude that the district court would necessarily have found that the harm was more serious than that normally resulting. While there is some suggestion of unusual harm, the suggestion is minimal.

We reject the government's argument that this error was harmless. The government argues that it was harmless because the district court would have departed on the basis of under-representation of criminal history if it had not departed under § 5K2.3. The record, however, simply does not support this contention.

### 2. Departure based on quantity of pornographic images

■ The Sentencing Guidelines explain that departure is allowed "even though the reason for departure is taken into consideration in determining the guideline range ... if the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines is inadequate or excessive." U.S.S.G. § 5K2.0. Accordingly, in light of the very large number of images (the district court appears to have accepted the government's estimate of 150,000), it was reasonable for the district court to depart on the grounds that the Guidelines did not give sufficient weight to quantity in such circumstances. We further find that, contrary to defendant's assertion, the district court could measure quantity by the number of images—instead of the number of computer disks—in making this equitable determination.

Defendant-appellant also argues that the district court improperly considered commentary from a November 2001 amendment to the Guidelines which encourages upward departures on the basis of quantity, but which was not in effect at the time of defendant's conviction. However, the court's explanation of the sentence indicates that it did not do so.

---

4. Accordingly, in departing under § 5K2.3, the district court effectively relied on an invalid factor (*i.e.*, "substantial impairment") in deciding to depart and thereby misapplied the Sentencing Guidelines. *See Williams v. United States*, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1990) (explaining that a misapplication of the Sentencing Guidelines occurs when a district court relies on an invalid factor in granting an upward departure). Therefore, we have jurisdiction to review Lasaga's sentence under 18 U.S.C. § 3742(a)(2).

In addition, defendant argues that there was not sufficient evidence of the number of images of child pornography. While the precise number of images of child pornography that defendant received was never determined, there is no doubt but that the number was far in excess of ten—the threshold quantity above which U.S.S.G. § 2G2.4 requires an increase of two offense levels. At his sentencing hearing, defendant did not challenge the 150,000 image estimate that was provided by the government and that was apparently accepted by the court. Indeed, defendant acknowledged that he possessed so much child pornography that he did not attempt to view it all.

Finally, appellant argues that the district court improperly assumed that all graphic image files downloaded on defendant's computer contained images that met the definition of "child pornography" under 18 U.S.C. § 2256. As defendant points out, this definition excludes images that are merely of nude children, images of persons over the age of eighteen, and computer-generated images. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). However, the plea agreement—which defendant signed—explicitly stated that the government was proceeding under 18 U.S.C. § 2256(8)(A), which criminalizes the possession of visual depictions produced in a manner that "involves the use of a minor engaging in sexually explicit conduct ...." This understanding was reinforced by the district court during its plea colloquy with defendant. Furthermore, defendant admitted in the course of his guilty plea that the images in question "were pornographic photographs of children." This result is particularly reasonable in light of the fact that defendant never contended below that the images were virtual child pornography even though two months prior to his guilty plea the Ninth Circuit had ruled that virtu-al child pornography could not be criminalized. *See Free Speech Coalition v. Reno*, 198 F.3d 1083 (9th Cir.1999).

### III.

We affirm Lasaga's conviction, vacate his sentence, and remand for re-sentencing consistent with this opinion.