NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 12-1032

—————————

UNITED STATES OF AMERICA

v.

VITALIY KROSHNEV,
                    Appellant

—————————

No. 12-1033

—————————

UNITED STATES OF AMERICA

v.

TATYANA KROSHNEV,
                    Appellant

—————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action Nos. 2-10-cr-00538-001/2 & 2-11-cr-00466-001)
District Judge: Honorable Norma L. Shapiro

—————————

Submitted Under Third Circuit LAR 34.1(a)
April 19, 2013

Before:  AMBRO, HARDIMAN, and COWEN, Circuit Judges

(Opinion filed: April 25, 2013)

—————————

OPINION

AMBRO, Circuit Judge

In connection with a prolonged scheme whereby they assisted hundreds of individuals to obtain fraudulently commercial driver's licenses in Pennsylvania, Appellants Vitaliy and Tatyana Kroshnev pled guilty to charges of conspiring to produce false identification documents, and were sentenced to 30 and 24 months' imprisonment, respectively. They now appeal their sentences. For the reasons that follow, we affirm.

I.

From 2007 to 2010, the Kroshnevs owned and operated International Training Academy ("ITA"), which purported to provide training to persons seeking to obtain a Pennsylvania commercial driver's license ("CDL"). Through ITA, the Kroshnevs assisted individuals in obtaining CDLs fraudulently from the Pennsylvania Department of Transportation ("PDOT") for a fee. PDOT must comply with federal standards when issuing CDLs, which include residency and language proficiency requirements.[1]

As part of the scheme, ITA would provide false residency documents to out-of-state individuals and assist them in using those documents to obtain a Pennsylvania driver's license—a prerequisite for a CDL. The out-of-state applicants were then provided with ITA-paid foreign language interpreters to furnish answers to the CDL computer-based knowledge test. These applicants received a CDL learner's permit on

---

[1] *See* Commercial Motor Safety Act of 1986, 49 U.S.C. § 31311(a)(2) (passage of knowledge and skills tests), (12) (domiciliary of state in which CDL is obtained); *id.* § 391.11(b) (ability to speak English sufficiently to understand traffic signs, respond to official inquiries, and make entries on reports).

passing the knowledge test, after which they made a "down payment" to ITA and were given information regarding training for the CDL driving skills test. From 2006 to August 2010, ITA (or its predecessor company, Commercial Driver Center) assisted over 1,000 clients in obtaining Pennsylvania driver's licenses or CDLs, over half of whom were out-of-state residents who obtained licenses using fraudulent residency information provided by ITA. The vast majority of these out-of-state licensees held active CDLs at the time of the Kroshnevs' sentencing. As "president" and "director" of ITA, respectively, Vitaliy and Tatyana were the organizers and leaders of the scheme; in addition, they enlisted many others to help carry out their enterprise.

## II.

In August 2010, the Kroshnevs—along with numerous co-defendants—were indicted for conspiracy to produce identification documents without lawful authority, and aiding and abetting the same, in violation of 18 U.S.C. § 1028(a)(1) and (f). Vitaliy was also charged with making a false statement in violation of 18 U.S.C. § 1001 and, in a separate indictment returned in August 2011, with conspiracy to defraud the United States in the administration of its immigration laws in violation of 18 U.S.C. §§ 371 and 1546. The Kroshnevs pled guilty to these charges, and the indictments were consolidated for sentencing before Judge Norma L. Shapiro.

At sentencing, Judge Shapiro followed the three-step process outlined in *United States v. Gunter*, 462 F.3d 237 (3d Cir. 2006).[2] She first calculated the Kroshnevs'

---

[2] *Gunter* set out a three-step process for district judges to follow when sentencing a defendant post-*United States v. Booker*, 543 U.S. 220 (2005): (1) "calculate a defendant's

3

advisory ranges under the United States Sentencing Guidelines ("Guidelines" or

"U.S.S.G.").[3] With an offense level of eight and criminal history category of I, Tatyana's

Guidelines' range was zero to six months' imprisonment. Vitaliy's offense level of ten

and criminal history category I yielded a Guidelines' range of six to twelve months'

imprisonment. The Government, however, at the second *Gunter* step, sought an upward

departure from the Guidelines' calculation for both Tatyana and Vitaliy on the basis of

U.S.S.G. § 2B1.1 application note 19(A), which instructs that such a departure may be

warranted when the "guideline substantially understates the seriousness of the offense."

The Government alternatively requested that Judge Shapiro vary above the Guidelines'

ranges at the third, and final, step of the sentencing process. She agreed with the

Government that the facts warranted an upward departure and heard argument from both

parties before imposing sentence.

In determining the extent of the departure, Judge Shapiro accepted the

Government's suggestion of using U.S.S.G. § 2L2.1 by analogy; in contrast to the

Guideline applicable to the Kroshnevs' fraud offense, which only includes enhancements

for the number of "victims" and amount of "loss" caused by the fraud, § 2L2.1—

concerning trafficking in fraudulent immigration documents—increases the offense level

Guidelines sentence precisely as they would have before *Booker*"; (2) "formally rul[e] on the motions of both parties and stat[e] on the record whether they are granting a departure and how that departure affects the Guidelines calculation"; and (3) "exercise[] [their] discretion by considering the relevant [§ 3553(a)] factors in setting the sentence they impose." 462 F.3d at 247 (alterations in original) (internal citations and quotation marks omitted).

[3] Section 2B1.1(a)(2) provides the base offense level for fraud, which was supplemented by §§ 3B1.1 (role as leader) and 3E1.1 (acceptance of responsibility); Vitaliy's additional false statement offense was incorporated via the grouping rules in § 3D1.2(b).

calculation based on the number of documents involved. The analogous enhancement to the Kroshnevs' conduct, an offense involving 100 or more documents, resulted in a nine-level increase. Applying the enhancement to the Kroshnevs' fraud offense resulted in an offense level of 17, and a corresponding Guidelines' advisory range of 24–30 months' imprisonment.

At step three, Judge Shapiro concluded that a sentence at the bottom of the enhanced advisory range would be appropriate for Tatyana, and thus imposed a sentence of 24 months' imprisonment. Vitaliy was sentenced to 30 months' imprisonment, however, the difference stemming primarily from his additional crimes.

On appeal, both Tatyana and Vitaliy challenge the procedural and substantive reasonableness of their respective sentences.[4]

### III.

We review district courts' sentences for procedural and substantive reasonableness under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007) (citing *Booker*, 543 U.S. at 260–62). The burden rests on the challenging party to show unreasonableness, and we give due deference to the sentencing court's judgment. *United States v. Cooper*, 437 F.3d 324, 330–32 (3d Cir. 2006), *abrogated on other grounds*, *Kimbrough v. United States*, 552 U.S. 85 (2007).

In reviewing a sentence, we "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the

---

[4] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. Our jurisdiction arises under 28 U.S.C. §§ 1291 and 3742.

5

Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. If a sentence is procedurally sound, we then "proceed to examine [its] substantive reasonableness." *United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010) (citing *United States v. Ausburn*, 502 F.3d 313, 328 (3d Cir. 2007)). "'The touchstone of reasonableness is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in § 3553(a).'" *Id.* (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc)).

The Kroshnevs assert that the District Court erred procedurally when imposing an upward departure at step two of the *Gunter* sentencing process.[5] While we have not set a brightline rule that district courts must follow in determining the extent of a permissible departure, we have approved "analogic reasoning," which permits the sentencing court to consider Guidelines addressing conduct analogous to that engaged in by a defendant. *See, e.g.*, *United States v. Jacobs*, 167 F.3d 792, 800 (3d Cir. 1999). Judge Shapiro used such reasoning, and did so appropriately. She clearly articulated her reasoning for applying the § 2L2.1 enhancement to the Kroshnevs' offense levels in calculating their Guidelines' ranges. She also explained that the number of identification documents obtained through the Kroshnevs' scheme was a relevant sentencing consideration and a reasonable measure of an upward departure to reflect the magnitude and scope of their criminal conspiracy. Moreover, Judge Shapiro correctly calculated the final Guidelines' range on the basis of

---

[5] The Kroshnevs do not dispute the initial calculation of their advisory ranges at step one.

6

the § 2L2.1 upward departure before imposing the Kroshnevs' respective sentences. Accordingly, the upward departures here are without procedural error.[6]

The Kroshnevs also challenge the substantive reasonableness of their sentences, alleging that Judge Shapiro did not give adequate consideration to the § 3553(a) factors at step three of the sentencing process. This argument fails as well. The sentencing record makes clear that, having considered all "colorable arguments" by both parties, *Merced*, 603 F.3d at 215, Judge Shapiro provided an adequate and reasonable basis for the sentences imposed that reflects meaningful consideration of the relevant sentencing factors.

Specifically, she noted the Kroshnevs' roles as ringleaders in and financial gain from their criminal scheme. She also remarked on the serious harm that resulted from their conduct to public safety generally and to immigrants (especially the Kroshnevs' co-defendants, many of whom were likely to be removed as a result of their felony convictions). Also recognized was the need for deterrence, particularly in light of the Kroshnevs' professed lack of understanding as to the illegality of their activities. In addition, to avoid unwarranted sentencing disparities and to reflect the Kroshnevs' conduct as leaders of the scheme, Judge Shapiro determined that their sentences should be higher than those of their co-defendants. And contrary to the Kroshnevs' contention, their likelihood of removal did not receive "short shrift"; rather, Judge Shapiro

---

[6] Appellants' reliance on *United States v. Negroni*, 638 F.3d 434 (3d Cir. 2011), and *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010), is misplaced, as those cases dealt with the propriety of a variance, whereas here the Court elected to depart (and, in doing so, expressly indicated the Guidelines' range to which it departed).

7

specifically addressed this factor but found that the enlisting of other immigrants and exposing them to removal aggravated, rather than mitigated, their offenses.

*   *   *   *   *

In sum, the Kroshnevs have not demonstrated procedural error on the part of the District Court nor met the burden for showing their sentences are substantively unreasonable, *i.e.,* that "no reasonable sentencing court would have imposed the same sentence on th[e] particular defendant[s] for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).  Accordingly, we affirm the sentences imposed.[7]

---

[7] Because we conclude the Kroshnevs' sentences were procedurally and substantively reasonable on the basis of the upward departure, we do not reach the Government's alternative argument that the sentences were reasonable if viewed as variances.