**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1350
_____

UNITED STATES OF AMERICA

v.

DANIEL R. SIDDONS,
                    Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA
(D.C. Crim. No. 07-cr-00717-001)
District Judge:  Honorable Paul S. Diamond
_____

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2011
_____

Before: RENDELL, JORDAN and BARRY, <u>Circuit Judges</u>

(Opinion Filed: October 5, 2011)
_____


Todd E. Henry, Esq.
22nd Floor
1500 Walnut Street
Philadelphia, PA 19102-0000

<u>Counsel for Appellant</u>

Mary A. Futcher, Esq.
Ashley K. Lunkenheimer, Esq.
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

Counsel for Appellee

_____

OPINION OF THE COURT
_____


BARRY, Circuit Judge

Daniel Siddons pled guilty to a 34-count indictment charging him with various types of fraud. Prior to sentencing, Siddons moved to withdraw his guilty plea, a motion the District Court denied. At sentencing, the Court imposed certain enhancements and varied upward from the recommended Sentencing Guidelines range. Siddons now appeals the denial of his motion to withdraw the guilty plea, as well as the imposition of the sentencing enhancements and the upward variance. We will affirm.

## I.     Background

Siddons was a licensed financial adviser working at the investment arm of Mellon Bank (later Citizens Bank), and then at Wachovia Securities. His job involved advising clients about purchasing investment products, and many of his clients were elderly customers seeking to invest their retirement savings. On November 15, 2007, a grand jury indicted Siddons, charging him with nine counts of mail fraud, in violation of 18 U.S.C. § 1341, five counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of bank fraud, in violation of 18 U.S.C. § 1344. A superseding indictment was later returned charging thirty-four counts of

mail, wire, and bank fraud. The Government alleged that Siddons solicited his bank clients to invest in speculative real estate transactions that he controlled and that were unrelated to bank products, an illegal practice in the securities industry known as "selling away." Some of his clients invested their modest life savings with Siddons, initially believing that they were investing in a bank-supported, conservative investment product. The Government accused Siddons of collecting $1.55 million between October 2002 and January 2006.

On February 3, 2009, while he was out on bail, Siddons requested that the District Court appoint him a new attorney; the Court denied his request. On March 3, 2009, one week prior to trial, the Court held a change of plea hearing after Siddons indicated that he wished to plead guilty. During the plea colloquy, Siddons stated that he was not satisfied with his attorney, and the Court called a halt to the plea proceedings. The Government's motion to revoke bail was then addressed, with the Court hearing sworn testimony from Siddons and remanding him after finding that he had contacted witnesses. Before the Court entered the remand order, Siddons stated that he wished to plead guilty to one count, and the Court recessed for Siddons to consult with his attorney. Following the recess, Siddons stated, upon repeated questioning by the Court, that he was "unequivocally" satisfied with his attorney, Supp. App. at 118, and he thereafter pled guilty to all counts of the indictment without a written plea agreement.

On July 15, 2009, Siddons, represented by new counsel, filed a motion to withdraw the plea. The District Court held a hearing, and Siddons and his father, who had been present at the meeting during the recess on March 3, 2009, testified that Siddons' prior attorney was unprepared to go to trial and had browbeaten Siddons into pleading guilty. That attorney and his associate testified and challenged Siddons' testimony. The Court stated that it did not believe Siddons, that the Government would be prejudiced by a withdrawal of the plea, and that Siddons had not adequately supported his claim of innocence. The motion was denied.

Siddons' Presentence Investigation Report listed a Guidelines range of 78 to 97 months. The range included a four-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(16)(A) (2008) because the offense involved a violation of securities law and Siddons was a financial adviser. The District Court imposed a two-level enhancement for obstruction of justice because it found that Siddons provided materially false information to the Court during his testimony at the hearing on the motion for new counsel and at the hearing to withdraw his guilty plea. It also found that he obstructed justice by contacting witnesses. With the enhancements, the final Guidelines range was 135 to 168 months. After reviewing the 18 U.S.C. § 3553(a) factors, the Court varied upward and imposed a sentence of 180 months on each count, to be served concurrently, as well as $1.3 million in restitution.

Siddons appeals the District Court's (1) denial of his motion to withdraw the guilty plea; (2) imposition of the four-level enhancement under § 2B1.1(b)(16)(A); (3) imposition of the two-level obstruction of justice enhancement; and (4) upward variance to 180 months.

## II.    Discussion[1]

We review a district court's ruling on a motion to withdraw a guilty plea for abuse of discretion. *United States v. Martinez*, 785 F.2d 111, 113 (3d Cir. 1986). We review a district court's factual findings regarding adjustments to the Guidelines range for clear error, and we review the court's "legal interpretation and application of the sentencing guidelines under a plenary standard." *United States v. Powell*, 113 F.3d 464, 467 (3d Cir. 1997). Finally, we review the reasonableness of the ultimate sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007).

---

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## A. Withdrawal of the Guilty Plea

A defendant seeking to withdraw a guilty plea bears a substantial burden of "showing a 'fair and just reason' for the withdrawal of his plea." *United States v. King*, 604 F.3d 125, 139 (3d Cir. 2010) (quoting Fed. R. Crim. P. 11(d)(2)). Accordingly, "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by leading guilty." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (citation and quotation marks omitted). When determining whether a defendant has shown a "fair and just reason" for withdrawing a plea, a district court must consider whether: "(1) the defendant asserts his innocence; (2) the defendant proffered strong reasons justifying the withdrawal; and (3) the government would be prejudiced by the withdrawal." *King*, 604 F.3d at 139 (internal quotation marks omitted). "Assertions of innocence must be buttressed by facts in the record that support a claimed defense." *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005) (citation and quotation marks omitted). Further, a defendant must also "give sufficient reasons to explain why contradictory positions were taken before the district court." *Jones*, 336 F.3d at 253 (citation and quotation marks omitted).

Siddons argues that his "fair and just reason" for seeking to withdraw his guilty plea was that at the time of his plea, his attorney was unprepared to go to trial and pressured him into pleading. Siddons' appeal on this issue fails for at least three reasons. First, while he states that he is innocent, he does not, as required, cite to any record evidence that would support his claim of innocence or sufficiently explain the contradictory position he took during the plea colloquy. Second, the District Court correctly found that the Government would be prejudiced by the withdrawal of the plea. Many of the Government witnesses were elderly, and there was a real risk that key witnesses would pass away or memories would fail prior to trial; indeed, at least four victims had died between the time of the defendant's fraud and the time of his motion to withdraw the plea. Reopening the case

5

would delay the trial and increase the likelihood that other witnesses would be unable to testify on behalf of the Government.  Finally, as the Court found after the hearing on the motion to withdraw the plea, Siddons' attorney was prepared to try the case had Siddons not pled guilty on March 3, 2009.  Accordingly, there was no "fair and just reason" justifying the withdrawal of the plea.

### B.  The Four-Level Investment Adviser Enhancement

A defendant's Guidelines range is to be increased by four levels if the offense involved

> a violation of securities law and, at the time of the offense, the defendant was (i) an officer or a director of a publicly traded company; (ii) a registered broker or dealer, or a person associated with a broker or dealer; or (iii) an investment adviser, or a person associated with an investment adviser.

U.S.S.G. § 2B1.1(b)(16)(A) (2008).[2]

The District Court applied this provision.  Siddons argues, however, that (1) he was not technically an investment adviser[3] in March 2003, the time that the indictment sets as the earliest offense date for the wire fraud counts; and (2) the § 2B1.1(b)(16)(A) enhancement did not exist at the time that

---

[2] The current Guidelines Manual recodifies this provision at § 2B1.1(b)(17)(A).

[3] The Guidelines use the definition of "investment adviser" listed at 15 U.S.C. § 80b-2(a)(11), which states, in relevant part, that investment adviser "means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities."

he was an investment adviser, so it is an *ex post facto* violation to apply it to him.

With reference to his first argument, Siddons began "selling away" in 2002, while employed as a financial adviser at Wachovia Securities. When Wachovia found out, Siddons resigned under threat of termination on January 23, 2003. The pertinent indictment against Siddons alleges that he committed instances of wire fraud, at the earliest, on March 3, 2003, after his resignation from Wachovia. The enhancement under § 2B1.1(b)(16)(A) still applies, however, because, as the Government states, "[t]he determination of loss and other factors pertinent to a fraudulent scheme is never confined to the date of the charged mailing or wiring, but always encompasses all relevant conduct that was 'part of the same course of conduct or common scheme or plan.'" Appellee's Br. at 78 (quoting U.S.S.G. § 1B1.3(a)(2)); *see also United States v. Stephens*, 198 F.3d 389, 390-91 (3d Cir. 1999) (permitting consideration of uncharged conduct beyond statute of limitations for purposes of Guidelines determination in fraud case). Accordingly, because Siddons was an "investment adviser" when he began fraudulently obtaining the victims' money, the enhancement in § 2B1.1(b)(16)(A) applies.

Siddons' *ex post facto* claim requires somewhat deeper analysis. [4] In most situations, "a court must use only one

---

[4] In brief, "[t]he *Ex Post Facto* Clause of the Constitution prohibits application of a law enacted after the date of the offense that inflicts a greater punishment[] than the law annexed to the crime when committed." *United States v. Pennavaria*, 445 F.3d 720, 723 (3d Cir. 2006) (citation and internal quotation marks omitted). The principles of the clause relate to the "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* (citation and quotation marks omitted). "The ex post facto inquiry has two prongs: (1) whether there was a change in the law or policy which has been given

version of the Guidelines under the 'one book rule,' and must apply that version in its entirety." *United States v. Mills*, 613 F.3d 1070, 1072 n.2 (11th Cir. 2010) (citing U.S.S.G. § 1B1.11(b)(2)). The Guidelines state that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a). However, if the court determines that use of the Guidelines Manual in effect on the sentencing date would violate the *ex post facto* clause, "the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." *Id.* § 1B1.11(b)(1); *see also United States v. Larkin*, 629 F.3d 177, 193 (3d Cir. 2010).

Importantly, however, the Guidelines also instruct that "[i]f the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses." U.S.S.G. § 1B1.11(b)(3). Siddons argues that because the enhancement contained in § 2B1.1(B)(16)(A) did not exist until November 1, 2003, after he was no longer an investment adviser, it was a violation of the *ex post facto* clause when the District Court applied the enhancement from the 2008 Manual, rather than using the 2002 Manual without the enhancement. The Government contends that there was no *ex post facto* violation because the Sentencing Guidelines' "grouping" provision for continuing crimes (U.S.S.G. § 3D1.2(d)), combined with the one-book rule and § 1B1.11(b)(3), put Siddons on notice that he would be sentenced for fraud under the later-enacted Guidelines Manual.

We have held that courts may use the later-enacted Guidelines Manual for sentencing "straddle" crimes— continuing offenses that started before an intervening change in the Guidelines but that ended afterward. *See United States*

---

retrospective effect, and (2) whether the offender was disadvantaged by the change." *Newman v. Beard*, 617 F.3d 775, 784 (3d Cir. 2010) (citation and quotation marks omitted). The only issue in this appeal is the first prong.

*v. Brennan*, 326 F.3d 176, 198 (3d Cir. 2003) ("[A]pplication of the November 2000 Sentencing Guidelines would still not violate the *ex post facto* clause if the fraud continued after the effective date of the amendment."); *United States v. Moscony*, 927 F.2d 742, 754 (3d Cir. 1991); *United States v. Rosa*, 891 F.2d 1063, 1068-69 (3d Cir. 1989). The crime here, wire fraud, is not technically a straddle crime because mail and wire fraud are not continuing offenses but, rather, are crimes that are complete upon the execution of each mailing or wiring. *See United States v. Seligsohn*, 981 F.2d 1418, 1425 (3d Cir. 1992), *superseded by statute for other reasons as stated in United States v. Corrado*, 53 F.3d 620, 624 (3d Cir. 1995).

The Government argues, however, that in cases of a continuing course of wire fraud, "the guideline calculation for a fraud offense is based on the entirety of the conduct during the scheme," and thus "it is appropriate to apply the guideline manual in effect at the time the fraud ended, on the theory that the defendant was fully on notice as he continued his conduct of the enhanced penalty." Appellee's Br. at 82. The Government relies on the "grouping" provision of U.S.S.G. § 3D1.2, which states that "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior," then "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. §§ 3D1.2(d), 3D1.2. Because, the argument goes, the District Court correctly relied on § 3D1.2(d) to group the thirty-four related counts of conviction for purposes of determining the offense level, *see* PSR ¶ 86, the Court appropriately applied "the final applicable manual to the entire sum of the wrongdoing." Appellee's Br. at 85.

The majority of Courts of Appeals that have decided the issue have held that use of the later-enacted Guidelines Manual in such circumstances is not an *ex post facto* violation because § 3D1.2, in combination with the one-book rule, gives notice to the defendant that his or her offenses may be

grouped for sentencing purposes and that the later-enacted Manual will apply. In *United States v. Vivit*, 214 F.3d 908 (7th Cir. 2000), for instance, the defendant was convicted of numerous counts of mail fraud involving false claims to insurance companies. Certain mailings involved minors, but those mailings occurred prior to the enactment of a two-point enhancement for use of a minor. *Id.* at 916-17. Other mailings that led to counts of conviction occurred after the enactment of the enhancement, but the district court applied the enhancement after grouping the convictions pursuant to § 3D1.2(d). The Seventh Circuit stated

> that the relevant inquiry becomes whether the grouping rules give the defendant fair notice at the time a crime is consummated that the commission of further crimes subject to grouping would subject the defendant to sentencing under revised Guidelines. The grouping rules, enacted in 1987, provide warning to criminals that completing another criminal offense similar to one committed previously places them in peril of sentencing under a revised version of the Guidelines. The introductory commentary to the grouping rules explains that because the offense guideline for fraud, § 2F1.1, "deal[s] with repetitive or ongoing behavior," multiple fraud convictions are appropriately grouped when the convictions involve substantially the same harm. *See* U.S.S.G. § 3D introductory commentary. *We believe that this conclusion reflects the intent of the Sentencing Commission to provide notice to criminals that engaging in ongoing fraudulent behavior involving the same type of harm risks grouping of convictions, which because of the one-book rule, will all be sentenced according to the Guidelines in effect when the latest conduct occurred.*

*Id.* at 919 (emphasis added).

10

Accordingly, the Seventh Circuit held that there was no *ex post facto* violation by virtue of the district court's decision to apply the "use of minors" enhancement to all of the grouped offenses. Similar reasoning has prevailed in the majority of Courts of Appeals that have addressed the issue. *See United States v. Kumar*, 617 F.3d 612, 626-28 (2d Cir. 2010); *United States v. Duane*, 533 F.3d 441, 449 (6th Cir. 2008); *United States v. Sullivan*, 255 F.3d 1256, 1262-63 (10th Cir. 2001); *United States v. Kimler*, 167 F.3d 889, 893-95 (5th Cir. 1999); *United States v. Bailey*, 123 F.3d 1381, 1404-07 (11th Cir. 1997); *United States v. Cooper*, 35 F.3d 1248, 1250-53 (8th Cir. 1994), *vacated*, 514 U.S. 1094 (1995), *reinstated*, 63 F.3d 761, 762 (8th Cir. 1995) (per curiam);[5] *but see United States v. Ortland*, 109 F.3d 539, 546-47 (9th Cir. 1997) (finding an *ex post facto* violation and requiring the district court to sentence the defendant under different Guidelines Manuals depending upon the date of the completion of the charged conduct in a multiple-count indictment).

Similarly, our decision in *United States v. Bertoli*, 40 F.3d 1384 (3d Cir. 1994), does not mandate a finding of an *ex post facto* violation. There, we held that where the district court grouped discrete acts of obstruction of justice for sentencing purposes, it was error to use a Guidelines Manual containing an enhancement enacted after the completion of some of the relevant conduct. *Id.* at 1401-04; *id.* at 1404 ("The fact that various counts of an indictment are grouped cannot override *ex post facto* concerns."). In *Bertoli*, however, we did not address the grouping provision at issue here, U.S.S.G. § 3D1.2(d), the provision we discussed above. Indeed, in *Bertoli*, there was no indication as to why the district court grouped the disparate conduct, but it could not

---

[5]At least one circuit has found no *ex post facto* violation in similar circumstances based only on the fact that § 1B1.11(b)(3) gave fair warning to the defendant that the later-enacted Guidelines Manual would be used; the court did not address grouping, even though the crimes involved repeated commission of the same offenses. *See United States v. Lewis*, 235 F.3d 215, 218 (4th Cir. 2000).

have been for the reasons stated in § 3D1.2(d) because the government itself acknowledged that grouping was improper. *See id.* at 1403 n.16 ("On appeal, the government does not endorse the district court's decision to combine Counts Three and Six for the purpose of determining which Manual applies. Rather, the government's sole argument is that the 1989 Manual is not more favorable to Bertoli than the 1993 Manual.").") Unlike Siddons' actions, which involved ongoing, connected fraudulent conduct occurring both before and after the enactment of the sentencing enhancement, the defendant's actions in *Bertoli* involved discrete, unconnected acts. We agree with those Courts of Appeals that have found no *ex post facto* violation when a court groups continuing, related conduct and applies the Guidelines Manual in effect during the latest-concluded conduct. This is so because the grouping provisions, combined with the one-book rule, place a defendant on notice that a court will sentence him or her under the Guidelines Manual in effect during the commission of his or her last offense in a series of continuous, related offenses.

Applying this analysis to Siddons, the District Court did not err in using the 2008 Guidelines Manual with the four-level enhancement at § 2B1.1(b)(16)(A). Siddons was an investment adviser when he initiated the fraud that led to his convictions. Even though he was no longer an investment adviser as of the date of the first offense or at the time of the enactment of the enhancement, a court considers his "relevant conduct" as an investment adviser in determining his Guidelines range. *See* U.S.S.G. § 1B1.3(a)(2). Due to the grouping rules at § 3D1.2(d) and the one-book rule at § 1B1.11, Siddons was on constructive notice that the November 1, 2003 enhancement could apply to his entire scheme, should he continue the conduct after the date of enactment. As the Eighth Circuit aptly stated, "it was not the amendments to the Sentencing Guidelines that disadvantaged [Siddons], it was his election to continue his criminal activity [after the effective date of the enhancements]." *Cooper*, 35 F.3d at 1250. There was no *ex post facto* violation here.

## C. The Obstruction of Justice Enhancement

The District Court imposed a two-level enhancement based on § 3C1.1, which states

> [i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.

The District Court found that Siddons had (1) lied about his reasons for wanting to change counsel and the nature of his dispute with his original counsel; (2) lied under oath when he attempted to withdraw his plea and explain his reasons for pleading guilty; and (3) attempted to unlawfully influence the testimony of witnesses and then lied about the reasons behind his behavior. The application notes to the Guidelines support all of the Court's reasons for imposing the enhancement. *See* U.S.S.G. §§ 3C1.1 cmt. n.4(a) (attempting to unlawfully influence a witness), cmt. n.4(f) (providing materially false information to a judge).

Siddons challenges the District Court's credibility determination, arguing that the Court misinterpreted his testimony on all fronts, and that he did not believe that he was violating the terms of his bail when he contacted witnesses. We will not disturb a sentencing court's factual findings unless, on review of the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (citation and quotation marks omitted). Having reviewed the transcripts of the various hearings, we cannot say that the Court committed error, much less that we have a definite and firm conviction there was error.

13

### D. The Reasonableness of the Sentence

Finally, Siddons argues that the District Court unreasonably applied the 18 U.S.C. § 3553(a) factors, and that his 180-month sentence was unduly punitive and greater than necessary. He contends that the only reason that he received such a high, above-Guidelines sentence was because he aired his grievances about his attorney with the Court, and the Court held the failure of that relationship against him at sentencing.

The record does not support Siddons' arguments. The District Court stated that it was imposing an above-Guidelines sentence because of the nature of Siddons' crimes against elderly investors and the "abhorrent nature" of the crimes, Supp. App. at 514; because of his abuse of his position as a financial adviser; and because the Court found that he "appears to have absolutely [no] compunction about lying, lying under oath. He appears to have no conscience." *Id.* at 510. The Court concluded, with reference to the "no conscience" component, that "the public does, indeed, need protection from the defendant" as "he would be likely to repeat his crimes if he were at liberty or to commit criminal acts if he were at liberty." *Id.* The Court acted well within its discretion when it varied upward in sentencing Siddons. The reasons it gave are persuasive and fully supported by the record.

Siddons does not argue that the District Court committed any procedural error. Under our "highly deferential" standard of review of a sentencing court's decisions, we are to affirm a court's procedurally sound sentence "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010) (citation and quotation marks omitted). Given the record before us, we simply cannot find that no reasonable court would have imposed a sentence one year longer than the highest Guidelines range.

14

## III.  Conclusion

We will affirm the judgment of sentence.