NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4430
_____

UNITED STATES OF AMERICA

v.

JOSEPH KUPETSKY,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 11-cr-00030-001)
District Judge:  Hon. Yvette Kane
_____

Submitted Under Third Circuit LAR 34.1(a)
September 25, 2012

Before:   McKEE, *Chief Judge*, JORDAN, and VANASKIE, *Circuit Judges*.

(Filed: October 18, 2012 )
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Joseph Kupetsky appeals a judgment of the United States District Court for the

Middle District of Pennsylvania sentencing him to 36 months' imprisonment and 5 years'

supervised release based upon his conviction for sexual abuse of a minor.  He contends

that the District Court's judgment should be vacated because the Court errantly imposed

a four-level enhancement under the United States Sentencing Guidelines (the "Guidelines") for "unduly influenc[ing] the minor [he abused] to engage in prohibited sexual conduct." U.S.S.G. § 2A3.2(b)(2)(B)(ii). For the reasons that follow, we will affirm the District Court's judgment.

## I.    Background

On February 12, 2010, S.B., who was 14 years old at the time, informed authorities that she had become pregnant after engaging in sexual intercourse with Kupetsky, who was 31 years old. She indicated that Kupetsky had started to date her mother between December 2009 and January 2010, and that he had impregnated her when he stayed in her family home in Lewisburg, Pennsylvania during a ten-day period in January of 2010.[1] S.B. delivered the baby on September 27, 2010, and DNA testing confirmed that Kupetsky was the father. Based on those facts, a felony information was filed against Kupetsky on January 31, 2011. It charged him with one count of sexual abuse of a minor, in violation of 18 U.S.C. § 2243(a).[2]

After Kupetsky pled guilty to the information, the United States Probation Office prepared a presentence investigation report ("PSR") calculating Kupetsky's total offense level to be 19 based, in part, on a four-level enhancement under § 2A3.2(b)(2)(B)(ii) of

---

[1] Because S.B.'s grandfather was a Bureau of Prisons employee, S.B.'s family home was located on the grounds of the United States Penitentiary in Lewisburg.

[2] Section 2243(a) provides for criminal sanctions when a defendant "in the … territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody … knowingly engages in a sexual act with another person who" has both "(1) … attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging." 18 U.S.C. § 2243(a).

the Guidelines because Kupetsky "unduly influence[d]" S.B. to engage in sexual conduct. Kupetsky objected, arguing at sentencing that he could not have unduly influenced S.B. since he was "mildly mentally retarded" and functioned only "at the primary school level." (Joint App. at 52-53.) Although the government acknowledged Kupetsky's mental challenges, it responded that § 2A3.2(b)(2)(B)(ii)'s enhancement should apply because "the defendant never portrayed himself to the victim as having intellectual limitations." (*Id.* at 55.)

After hearing the parties' arguments, the Court indicated that it had found S.B.'s victim impact statement, in which she had said she was a "virgin and wanted to keep it that way" before Kupetsky "raped [her]" and "ruined [her] life" (PSR ¶ 20), to be "very compelling" (Joint App. at 57). Nevertheless, the Court found it "difficult to make a determination that th[e undue influence] application [was] fairly applied to the defendant without actually hearing from the victim." (*Id.*) In response, the government called S.B. to testify. She stated that she had first met Kupetsky when she was 13 years old, and that he went "out [with her mother] for a few months." (*Id.* at 60.) While there was "something off about him that [S.B.] couldn't put [her] finger on"[3] (*id.*), she told the Court that she thought Kupetsky "was normal" because he would tell jokes and act "like a normal person" (*id.* at 60). For example, she recounted seeing Kupetsky drive a

---

[3] S.B. explained that Kupetsky would periodically tell S.B. things she simply did not believe. He told her, for example, that "he used to be a cop, he used to be a ranger at [a] park …, [and that] he ha[d] a whole uniform." (Joint App. at 61.)

3

vehicle, interact in her home with other adults, watch football games, and consume alcohol.

After the government concluded its questioning, the Court continued eliciting S.B.'s testimony by posing some questions of its own.  Pointing out that S.B. had given a "written statement in which [she] described an aggressive … attack[] by [Kupetsky], but [had described what occurred differently] on prior occasions"[4] (*id.* at 63), the Court asked S.B. to explain how Kupetsky had impregnated her.  As she explained it:

> I was walking my dog, and most of the time he doesn't like to go in the backyard, so I took him on the corner of the bus stop where it is like a farm thing, and I was just walking him around the community, and [Kupetsky], he was following me, and he took me into the bus stop and he started taking off my clothes and he was very mean, he told me not to tell anybody.

(*Id.*)  S.B. complied with Kupetsky's request not to tell anybody, because she "didn't want to hurt [her] mom," who was dating Kupetsky at the time.  (*Id.*)  She feared, moreover, that "if [she] told … the truth, … [she] would have gotten beat."  (*Id.*)

After hearing S.B.'s testimony, the Court determined that application of § 2A3.2(b)(2)(B)(ii)'s four-level enhancement was appropriate "even respecting the defendant's limitations."  (*Id.* at 68.)  As the Court explained it:

> [T]here … was special access that [Kupetsky] had to this victim based on his relationship with the mother, his ability to be in the home and to enjoy an easy relationship with the victim and her siblings.  And I think that the

---

[4] When interviewed on September 8, 2010, S.B. said Kupetsky had "forced himself" upon her but specifically "noted that no weapons or threats of violence were used."  (PSR ¶ 14 (internal quotation marks omitted).)  When interviewed on December 12, 2010, by contrast, S.B. stated that Kupetsky urged her to have sex with him by saying "come on, I love you.  I want to get married to you," and that he "dragged her …, pulled down her pants, [and] got on top of her" when she would not oblige.  (*Id.* ¶ 16 (internal quotation marks omitted).)

4

case is unusual because we have an unusually vulnerable victim, a very young girl, … .

> Listening to her account, I do not believe it would be inappropriate for the Court to find that the defendant exerted force. But even lacking that force, I believe that undue influence was exerted on the victim.

(*Id.* at 68-69.) Thus, the District Court adopted the PSR's total offense level of 19 and, within the corresponding advisory sentencing range, sentenced Kupetsky to 36 months' imprisonment and 5 years' supervised release.

Kupetsky timely appealed.

## II. Discussion[5]

Kupetsky argues that the District Court errantly calculated his Guidelines range to include the four-level enhancement for undue influence. Although he acknowledges that there is a rebuttable presumption that the enhancement applies when, as here, the defendant "is at least 10 years older than the minor," U.S.S.G. § 2A3.2 cmt. 3(B), Kupetsky claims that he successfully rebutted it by establishing "that his mental age was actually less than [S.B.'s] at the time of the incident,"[6] (Appellant's Opening Br. at 12).

---

[5] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

[6] In support of that contention, Kupetsky points to a neurological evaluation in which a licensed psychologist, Dr. John Harvey, concluded that Kupetsky has an "overall intellectual ability … below the 1st percentile" that causes him to have "difficulty listening to, understanding and comprehending and reasoning through complex verbal information … [and] difficulty with challenging problem solving." (Appellant's Opening Br. at 15 (citation omitted).) Kupetsky filed Dr. Harvey's report under seal alongside an unopposed motion requesting leave to keep that filing sealed. We will grant Kupetsky's motion by way of a separate order.

Absent that presumption, he reasons, there is simply no basis upon which to conclude that he unduly influenced S.B.'s conduct. We disagree.

To determine whether a defendant "unduly influenced [a] minor to engage in prohibited sexual conduct," U.S.S.G. § 2A3.2(b)(2)(B)(ii), the sentencing court must "closely consider the facts of the case to determine whether … influence over the minor compromised the voluntariness of the minor's behavior," *id.* § 2A3.2 cmt. 3(B); *see United States v. Patterson*, 576 F.3d 431, 443 (7th Cir. 2009) (noting that "the defining characteristic of undue influence is that it involves a situation where the influencer has succeeded in altering the behavior of the target" (citation and internal quotation marks omitted)). While our review of the District Court's interpretation and application of the Guidelines is generally plenary, how much influence a person exerts over someone else is a quintessentially factual question and, as such, we review it for clear error. *See United States v. Geevers*, 226 F.3d 186, 189 (3d Cir. 2000) ("Our review of the District Court's interpretation and application of the guidelines is plenary, but where the District Court's application is based on factual conclusions, we will reverse only if its conclusion is clearly erroneous."); *see also United States v. Hagen*, 641 F.3d 268, 270 (8th Cir. 2011) (exercising clear error review over the district court's determination that the defendant "had not rebutted the presumption that [a materially similar] enhancement applied and that, on the contrary, the evidence supported [its] application").[7] Under that standard of

---

[7] The *Hagen* court discussed undue influence in the context of evaluating the applicability of an enhancement found in § 2G1.3(b)(2)(B) of the Guidelines, not § 2A3.2(b)(2)(B) with which we are concerned here. But other than the applicable increase to the total offense level, the "Guideline language and application notes for both

review, we will not reverse a sentencing court "unless, on review of the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." *United States v. Siddons*, 660 F.3d 699, 708 (3d Cir. 2011) (citation and internal quotation marks omitted). We have no such conviction here.

Even accepting as true Kupetsky's questionable assertion that his mental limitations serve to rebut the presumption of undue influence triggered by the 17-year age difference between him and his victim,[8] the District Court still had ample grounds upon which to conclude that Kupetsky "compromised the voluntariness of [S.B.'s] behavior." U.S.S.G. § 2A3.2 cmt. 3(B). S.B.'s victim impact statement made it clear to the Court that she was a "virgin and wanted to keep it that way" before Kupetsky assaulted her (PSR ¶ 20), and her testimony about the incident substantially confirmed what S.B. said in her December 12, 2010 interview – namely, that Kupetsky "dragged her …, pulled down her pants, [and] got on top of her" (*id.* ¶ 16 (internal quotation marks omitted); *see* Joint App. at 63 (S.B.'s testimony that Kupetsky followed her and "started taking off

---

[of those provisions] are identical in all" relevant respects. *United States v. Jerchower*, 631 F.3d 1181, 1186 n.2 (11th Cir. 2011). Thus, the "interpretation of the undue influence enhancement under § 2A3.2(b)(2)(B) applie[s] to § 2G1.3(b)(2)(B)" and vice-versa. *Id.*

[8] The presumption, as we have already noted, applies because Kupetsky was 31 years old at the time of the assault while S.B. was only 14 years old. *See* U.S.S.G. § 2A3.2 cmt. n.3(B) (noting that there is a rebuttable presumption that the enhancement applies when the defendant "is at least 10 years older than the minor"). Given the "victim-focused inquiry" the Guidelines call for, *United States v. Lay*, 583 F.3d 436, 446 (6th Cir. 2009) (internal quotation marks omitted), we have our doubts as to whether Kupetsky's mental limitations defeated the presumption under the circumstances of this case. S.B., after all, reported thinking that Kupetsky "was normal" and testified to observing Kupetsky engage in several ordinary adult activities. (Joint App. at 60.)

[her] clothes and … was very mean")).  Such physical force, which the District Court appropriately deemed evident from the record (*see* Joint App. at 69 ("Listening to her account, I do not believe it would be inappropriate … to find that the defendant exerted force")), supports a finding that Kupetsky's "influence over [S.B.] compromised the voluntariness of [her] behavior," U.S.S.G. § 2A3.2 cmt. 3(B); *see Hagen*, 641 F.3d at 271 (characterizing "forceful sexual intercourse" as "evidence of undue influence").  So too does the evidence of psychological force Kupetsky exerted, particularly when coupled with S.B.'s age and general emotional state.  Indeed, as S.B. testified, she complied with Kupetsky's directive "not to tell anybody" what he had done to her (Joint App. at 63) because he successfully prompted her to fear the repercussions in her family if she told the truth, *see Hagen*, 641 F.3d at 271 (relying, in part, on the fact that the defendant told the victim "to conceal the encounter from her mother" in upholding the district court's finding of undue influence).

In sum, we are unimpressed by "[Kupetsky's] protestations that his mental health and learning deficiencies undermine the [D]istrict [C]ourt's determination that his influence over [S.B.] compromised the voluntariness of her behavior."  *Id.*  We accordingly hold that the District Court did not clearly err in finding that S.B.'s voluntariness was compromised.

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's judgment.

8