**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2534
_____

UNITED STATES OF AMERICA

v.

EPOLITO ESTEVEZ-ULLOA, a/k/a Polito Esteves,
a/k/a Cecar Santiago, a/k/a Vistor R. Martinez,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cr-00126-001)
District Judge: Honorable Paul S. Diamond
_____

Submitted under Third Circuit LAR 34.1(a)
April 15, 2020
_____

Before: AMBRO, JORDAN, and SHWARTZ, <u>Circuit Judges</u>.

(Filed: April 16, 2020)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Epolito Estevez-Ulloa appeals his sentence for illegal reentry. Because the sentence was substantively reasonable, we will affirm.

I

Estevez-Ulloa is a native and citizen of the Dominican Republic. Around 1991, he illegally entered the United States but thereafter obtained lawful permanent resident status. Thereafter, he was arrested and convicted of federal and state drug crimes and was deported. He again illegally reentered the United States, and was again convicted of drug offenses. Instead of being immediately deported, he was charged with unlawful reentry after deportation, in violation of 8 U.S.C. § 1326(a), (b)(2). He pleaded guilty.

As part of sentencing, Estevez-Ulloa submitted a letter stating that he provided information about corrupt narcotics officers, which was later shown to be untrue. The Court continued the sentencing hearing to review the letter. At the next sentencing hearing, the Government represented that no evidence supported the letter, and Estevez-Ulloa's counsel suggested that the letter may have been the result of psychological problems. The Court again continued the sentencing hearing to allow defense counsel to determine whether such psychological problems existed. At the next sentencing hearing, defense counsel stated that Estevez-Ulloa was mentally competent and relayed other information, but the Court said that this information did not corroborate the allegations in the letter. The Court ordered an amended presentence report to address a possible enhancement for obstruction of justice.

The amended report applied a two-level enhancement to Estevez-Ulloa's offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1, explaining that the letter was false and that Estevez-Ulloa had made contradictory statements about the letter to the Probation Office. Given that enhancement, other adjustments, and his criminal history, the report placed his Guidelines range at 70 to 87 months' imprisonment. Estevez-Ulloa objected to the enhancement at the next sentencing hearing and the Court continued the hearing so the Government could respond. Estevez-Ulloa subsequently withdrew his objection.

At the fifth and final sentencing hearing, the District Court adopted without objection the facts and conclusions in the amended presentence report. The Government moved for a downward departure based on matters unrelated to the letter. The Court granted the motion and departed downward two levels, resulting in a Guidelines range of 57 to 71 months' imprisonment.

The District Court sentenced Estevez-Ulloa to 72 months' imprisonment followed by three years' supervised release. The 72-month sentence included a one-month upward variance, which the Court explained was warranted based on the facts before the Court, including the letter. In explaining its sentence, the Court cited, among other things, Estevez-Ulloa's criminal history since residing in the United States and the fact that he only made his living selling drugs. In imposing a term of supervised release, the Court found that the presumption against supervised release for deportable defendants had been rebutted based on Estevez-Ulloa's prior criminal activity and the presence of his wife in the United States and that supervised released would deter reentry.

3

Estevez-Ulloa appeals his sentence.

II

Estevez-Ulloa claims that the District Court's (1) one-month upward variance and (2) imposition of a term of supervised release were substantively unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. United States v. Miller, 833 F.3d 274, 285 (3d Cir. 2016). We will overturn a sentence as substantively unreasonable "only where 'no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided.'" United States v. Napolitan, 830 F.3d 161, 164 (3d Cir. 2016) (quoting United States v. Freeman, 763 F.3d 322, 335 (3d Cir. 2014)). We look at the totality of the circumstances, United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc), and the record before the District Court, United States v. Lessner, 498 F.3d 185, 203 (3d Cir. 2007).

A

Estevez-Ulloa argues that the one-month upward variance was substantively unreasonable because the District Court's reasons for the variance were already encompassed in the determination of his Guidelines range. At the outset, "we cannot presume that a sentence is unreasonable simply because it falls outside the advisory Guidelines range." Tomko, 562 F.3d at 567. Moreover, "a sentencing court is not prohibited from considering the factual basis underlying a defendant's sentence enhancements, and indeed, should consider those facts in order to tailor the sentence to the defendant's individual circumstances." United States v. Greenidge, 495 F.3d 85, 103 (3d Cir. 2007) (emphasis omitted); see also United States v. Siddons, 660 F.3d 699, 708

(3d Cir. 2011).  Indeed, a sentencing court may consider conduct that also supports an obstruction enhancement when applying the § 3553(a) factors and "fixing a sentence." Greenidge, 495 F.3d at 102-03.

Here, the District Court explained that a variance was warranted based on the record, which includes Estevez-Ulloa's extensive criminal history, his sole vocation of drug dealing, his multiple illegal entries into the United States, and his obstructive conduct.  See Lessner, 498 F.3d at 203.  As to this latter point, his letter falsely accused several law enforcement officers of wrongdoing.  Not only were the accusations false, but Estevez-Ulloa's motivation for his accusations against the agents was based on their failure to fulfill a purported promise that he could remain in the United States despite his unlawful status.  Moreover, Estevez-Ulloa provided shifting explanations about the letter. He first told Probation that he wrote the letter himself in Spanish and that another inmate typed it in English, but he later stated that he told an inmate what he wanted to say and that inmate relayed the information to another inmate who typed the letter.  Furthermore, the submission of the letter caused the Government to waste resources to investigate its contents, caused his counsel to probe unnecessarily Estevez-Ulloa's psychological fitness, and caused the Court to convene five separate sentencing proceedings.  A reasonable sentencing court could easily conclude that the impact of the letter and Estevez-Ulloa's statements about it, together with his repeated drug-dealing while illegally in the United States, warranted additional punishment.

B

5

Estevez-Ulloa's argument that imposing supervised release was substantively unreasonable also fails. "Deportable immigrants are presumptively exempt from the discretionary imposition of supervised release . . . . " United States v. Azcona-Polanco, 865 F.3d 148, 151 (3d Cir. 2017) (citing U.S.S.G. § 5D1.1(c)). Nonetheless, a court may impose supervised release if "the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." U.S.S.G. § 5D1.1 cmt. n.5. In Azcona-Polanco, we noted that we would affirm a term of supervised release imposed upon a deportable defendant as substantively reasonable given, among other facts, the defendant's "serious criminal history," "that after being deported he illegally reentered the United States," and that he "assumed an alias to remain in the United States illegally." 865 F.3d at 154-55 & n.3. Those same facts are present here. Estevez-Ulloa entered the United States twice without authorization, used aliases, and dealt drugs while in the United States. Given those facts, and the fact that his wife resides in the United States, a reasonable sentencing court would conclude that an additional deterrent in the form of supervised release was warranted.

## III

For the foregoing reasons, we will affirm Estevez-Ulloa's sentence.