**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-1422

_____

UNITED STATES OF AMERICA

v.

MARIJAN CVJETICANIN,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J Crim. No. 3-14-cr-00274-001)
District Judge: Hon. Michael A. Shipp

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 6, 2017

_____

Before: MCKEE, COWEN, and FUENTES, *Circuit Judges*.

(Opinion filed:  July 21, 2017)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

McKEE, *Circuit Judge*.

Marijan Cvjeticanin appeals the District Court's dismissal of his Motion to Dismiss the Superseding Indictment and the District Court's denial of his Motion for New Trial. Cvjeticanin also challenges the District Court's loss calculation and the amount of restitution he was ordered to pay. For the reasons that follow, we will affirm the District Court in its entirety.

## I

### A. Denial of Cvjeticanin's Motion to Dismiss the Superseding Indictment and Motion for New Trial

#### 1. *Motion to Dismiss Superseding Indictment*

We exercise plenary review over legal conclusions in reviewing denial of a motion to dismiss an indictment, and we review factual findings for clear error.[1] A motion to dismiss an indictment is a "challenge to the sufficiency of the indictment," and must therefore "be decided based on the facts alleged within the four corners of the indictment, not the evidence outside of it."[2]

In this case, Cvjeticanin maintains that the conduct the Superseding Indictment described amounted to no more than a breach of contract between Automatic Data Processing and Broadridge, on the one hand, and Flowerson, on the other hand, and that the District Court therefore erred in not dismissing the Superseding Indictment because it criminalized a civil dispute.

---

[1] *United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012).
[2] *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007).

We disagree. The allegations in this Superseding Indictment were sufficient under Rule 7(c)(1) of the Federal Rules of Criminal Procedure to allege a violation of 18 U.S.C. § 1341.[3] The Superseding Indictment charged nine separate instances of mail fraud, each linked to the mailing of a false invoice billing either ADP or Broadridge for thousands of dollars of non-existent services. These allegations, if proven, "constitute a violation of the law that [Cvjeticanin] [was] charged with violating,"[4] and "could result in a guilty verdict."[5] Indeed, the allegations in this case *did* result in a guilty verdict for Cvjeticanin. The Superseding Indictment never alleges a contract, or a breach thereof, and Cvjeticanin's contention that the allegations amount to a civil contract dispute is meritless. His criminal conduct arose in the context of a contractual relationship (as is true of many mail frauds), but his attempt to redefine that criminal conduct into a mere breach of contract is a frivolous argument the District Court properly rejected.

2. *Motion for New Trial*

---

[3] Under Fed. R. Crim. P. 7(c)(1), "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "An indictment is generally deemed sufficient if it: 1) contains the elements of the offense intended to be charged, 2) sufficiently apprises the defendant of what he must be prepared to meet, and 3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989) (internal quotation marks, citation, and brackets omitted).

[4] *United States v. Small*, 793 F.3d 350, 352 (3d Cir. 2015).

[5] *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011). *See also United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002) (explaining that an indictment does not state an offense sufficiently if the specific facts that it alleges "fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation").

We also affirm the District Court's denial of Cvjeticanin's Motion for New Trial.

Rule 33 of the Federal Rules of Criminal Procedure instructs that a district court may

vacate any judgment and grant a new trial if the interest of justice so requires.[6]  Rule 33

motions "are not favored and should be granted sparingly and only in exceptional

cases."[7]

Cvjeticanin claims that he was "unfairly convicted" because the Government

improperly removed allegedly exculpatory evidence from the courtroom, thereby

thwarting the jury's ability to review evidence it requested pertaining to Counts 1 and 5

of the Superseding Indictment.[8]  According to Cvjeticanin, this "misconduct" undermined

his ability to present a defense and infected the jury's verdict as to all nine Counts of the

Superseding Indictment.[9]  Cvjeticanin further claims that the jury likely held the failure to

produce the exhibits against him.

Cvjeticanin argued essentially the same at the District Court.  The District Court

noted that these claims were "based on [a] mischaracterization of the facts."[10]  The

District Court explained:

> Counsel was given an opportunity to review all evidence in the possession
> of the courtroom deputy . . . prior to the evidence going back with the jury
> to deliberations . . . . Additionally, the parties were aware that due to the
> voluminous nature of the newspapers, those exhibits would remain in the
> courtroom during deliberations. As is clear from the jury communications,

---

[6] *See United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002).
[7] *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (internal quotation marks and citation omitted).
[8] Appellant's Br. at 19–20.
[9] Appellant's Br. at 2.
[10] App. 10.

the jury also understood the newspapers were remaining in the courtroom and were available to them upon request. . . . Even after the jury communicated that it reached a verdict, but before the newspapers for Count Five could be delivered, the Court, in the utmost of caution, did not accept the jury's verdict. Instead, the Court brought the remaining newspapers requested to the jury, without instruction, and permitted the jury to communicate if it still had reached a verdict. Defendant did not object during any of these procedures, except as noted above.

Here, justice does not require a new trial.[11]

Though we generally review a district court's consideration of a motion for new trial for abuse of discretion,[12] the parties here appear to disagree about the applicable standard of review. The Government maintains that Cvjeticanin is precluded from challenging the issue at all on appeal because Cvjeticanin, himself, "invited" the error.[13] Even if Cvjeticanin can challenge the issue, the Government argues, we should review only for plain error because Cvjeticanin raises this for the first time on appeal. Cvjeticanin argues we should review for abuse of discretion.

We do not have to decide this issue because, even assuming that Cvjeticanin could raise the issue on appeal, he would not be able to demonstrate that the District Court abused its discretion in denying the motion for a new trial, much less that it committed plain error.

We have just quoted the District Court's able explanation of its reasoning and its clarification of what actually happened to the exhibits. There is absolutely no error here. We agree with the District Court's conclusion that "[t]he mere fact that the jury requested

---

[11] App. 13.

[12] *See United States v. Pavulak*, 700 F.3d 651, 671 (3d Cir. 2012).

[13] Appellee's Br. at 28 (internal quotations and citations omitted).

evidence and then determined it was able to reach a verdict without that evidence does not constitute an error."[14] Moreover, "the misplacing or unintentional brief removal of an exhibit from the courtroom does not constitute prosecutorial misconduct."[15] Ultimately, Cvjeticanin's arguments on appeal do not come close to suggesting "that there is a serious danger that a miscarriage of justice has occurred"[16] or to convincing us that "an innocent person has been convicted."[17]

We therefore also affirm the District Court's denial of Cvjeticanin's Motion for New Trial.

## B. Loss Calculation and Restitution Judgment

### 1. *Loss Calculation*

Cvjeticanin next argues that the District Court clearly erred in finding that he caused over $550,000 in loss.[18] He asserts instead that the Court should have limited its loss finding to the $28,775.[19]

Our review of the District Court's finding as to the amount of loss is for clear error.[20] The Government had the burden of showing the amount of loss by a

---

[14] App. 13.

[15] App. 11–12 n.2.

[16] *Johnson*, 302 F.3d at 150 (internal quotation marks omitted).

[17] *Id.*

[18] A loss of between $550,000 and $1,500,000 results in an offense level increase of 14 levels, while a loss of between $15,000 and $40,000 results in an offense level increase of 4 levels. U.S.S.G. § 2B1.1(b)(1).

[19] Cvjeticanin's Brief states that the amount is $28,783. We presume that was in error. *See* Supp. App. 336; App. 757, 862.

[20] *United States v. Dullum*, 560 F.3d 133, 137 (3d Cir. 2009); *see also* U.S.S.G. § 2B1.1 cmt. n.3(C) (stating that the "sentencing judge is in a unique position to assess the

preponderance of the evidence.[21]  After the Government made out its prima facie case of the loss amount, "the burden of production shift[ed] to [Cvjeticanin] to provide evidence that the Government's evidence [wa]s incomplete or inaccurate."[22]  The District Court "need[ed] only [to] make a reasonable estimate of the loss. . . . based on available information."[23]  It clearly did that.

Cvjeticanin had maintained in the District Court, as he does here, that there was no loss, or any loss was, at most $28,775, which was the loss specifically attributable to the fraudulent invoices charged in the nine Counts of conviction.  He thus argued that he deserved either a 0- or 4-level loss enhancement.  The Government, on the other hand, had argued that the loss totaled $1,967,338, warranting a 16-level enhancement.

To reach that amount, the Government identified several categories of loss in an "actual loss chart" it provided in a sentencing memorandum submitted to the District Court.  Relying on that chart, the District Court explicitly found that the Government had proven a loss amount of $676,000, enough to warrant a 14-level enhancement.

Contrary to Cvjeticanin's argument on appeal, the loss associated with his nine Counts of conviction is not, by itself, "determinative as to the amount of loss."[24]  In fact, we have explained that "[t]he determination of loss and other factors pertinent to a

---

evidence and estimate the loss based upon that evidence," so the "court's loss determination is entitled to appropriate deference").

[21] *United States v. Jimenez*, 513 F.3d 62, 86 (3d Cir. 2008).
[22] *Jimenez*, 513 F.3d at 86.
[23] U.S.S.G. § 2B1.1 cmt. n.3(C); *see United States v. Ali*, 508 F.3d 136, 145 (3d Cir. 2007).
[24] Appellant's Br. at 29.

fraudulent scheme. . . always encompasses *all* relevant conduct that was 'part of the same course of conduct or common scheme or plan.'"[25] The fraudulent invoices accounting for the $640,202 in loss—set forth in the actual loss chart on which the District Court relied—were undoubtedly part of the same scheme as the nine invoices charged as substantive Counts in the Superseding Indictment. Accordingly, the District Court did not commit clear error by including the loss amounts for the fraudulent invoices in its final loss calculation.

### 2. *Restitution Judgment*

As to the District Court's $1,254,163.36 restitution judgment, Cvjeticanin levies two challenges on appeal: (1) that the District Court erred by not considering his financial status, and (2) that the District Court erred by finding that the law firm at which he was employed was a victim of his offense.

We exercise plenary review over whether restitution was permitted and abuse-of-discretion review as to the amount of restitution ordered.[26] At the outset, we acknowledge that the United States Supreme Court's recent decision in *Manrique v. United States* raises some questions as to whether we have jurisdiction to hear Cvjeticanin's challenge to the District Court's restitution order.[27] However, there is no need for us to settle that issue here, given our foregoing discussion.

---

[25] *United States v. Siddons*, 660 F.3d 699, 704 (3d Cir. 2011) (emphasis added) (quoting U.S.S.G. § 1B1.3(a)(2)).

[26] *United States v. Bryant*, 655 F.3d 232, 253 (3d Cir. 2011).

[27] *See Manrique v. United States*, 137 S. Ct. 1266 (2017) (holding that a defendant's "single notice of appeal, filed between the initial judgment and [an] amended judgment"

8

First, Cvjeticanin's argument relies on the wrong statute. The relevant statute, the Mandatory Victims Restitution Act, as more recently codified at 18 U.S.C. § 3663A(c)(1)(A)(ii),[28] clearly supports the District Court's decision not to consider Cvjeticanin's financial status in its restitution determination.[29]

Moreover, under the MVRA, the parties in this case were appropriately considered victims. We are not persuaded by Cvjeticanin's claim that the law firm's voluntary agreement to refile the applications (after Cvjeticanin had improperly filed them) means that the law firm was not a victim of the fraudulent scheme. It is obvious that the law firm was "directly harmed by [Cvjeticanin's] criminal conduct in the course of [his] scheme."[30] Accordingly, the District Court set an amount of restitution that the court believed would "make [the law firm] whole, . . . fully compensate [it] for [its] losses, and . . . restore [it] to [its] original state of well-being."[31]

---

is "[in]sufficient to invoke appellate review of the later-determined restitution amount," at least when the government objects to the defendant's failure to file a notice of appeal after the amended judgment).

[28] *United States v. Jacobs*, 167 F.3d 792, 796 (3d Cir. 1999) (acknowledging that the old statute was "replaced").

[29] *See id.* (noting that under the MVRA, "the court shall order restitution to each victim in the *full amount* of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant") (quoting 18 U.S.C. § 3664(f)(1)(A)); *see* 18 U.S.C. § 3663A(d).

[30] 18 U.S.C. § 3663A(a)(2) (providing that a "victim" is "a person directly and proximately harmed as a result of the commission of an offense . . . including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern"); *see United States v. Fallon*, 470 F.3d 542, 548 n.12 (3d Cir. 2005).

[31] *United States v. Simmonds*, 235 F.3d 826, 831 (3d Cir. 2000) (describing the MVRA's principal purpose).

Finally, we also reject Cvjeticanin's argument that the firm's voluntary involvement with ADP and Broadridge breaks a "causal link" required to find that the firm was a victim for restitution purposes.[32] The District Court ordered Cvjeticanin to pay restitution to ADP and Broadridge for the hundreds of thousands of dollars they spent for advertisements that were never placed. The firm incurred losses by having to properly refile those advertisements. But for Cvjeticanin's fraudulent conduct, the firm would not have incurred the related cost. Restitution was appropriate, and the District Court did not abuse its discretion in ordering it.

## III

For the aforementioned reasons, we will affirm the District Court in its entirety.

---

[32] Appellant's Br. at 40.