**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1599
_____

UNITED STATES OF AMERICA

v.

MARIJAN CVJETICANIN,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. No. 3-14-cr-00274-001
District Judge:  Honorable Michael A. Shipp

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 19, 2019

_____

Before: CHAGARES, MATEY, and FUENTES, <u>Circuit</u> <u>Judges</u>.

(Filed:  November 21, 2019)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not
constitute binding precedent.

CHAGARES, Circuit Judge.

Marijan Cvjeticanin was convicted of nine counts of mail fraud, in violation of 18 U.S.C. § 1341, based on a scheme to defraud clients through false billing practices. Cvjeticanin now appeals the District Court's denial of his two motions for a new trial. We will affirm.

I.

We write for the parties and so recount only the facts necessary to our decision.

Cvjeticanin worked as a paralegal and then as an attorney at a New York immigration law firm. As both a paralegal and as an attorney, Cvjeticanin was responsible for preparing applications for permanent residency for foreign citizen-employees of two corporate clients (including ADP) with operations in the United States. In order for corporate employers to apply for permanent residency for their foreign citizen-employees, they must demonstrate a need to hire a foreign worker for a specific position and show that there are no minimally qualified United States citizens available to fill those positions. To meet these requirements, employers must first engage in recruiting by placing print advertisements for the positions in the geographic locations where the positions are based. The law firm that employed Cvjeticanin used the services of third-party advertising agencies to place the required print advertisements.

The Second Superseding Indictment alleged that Cvjeticanin defrauded two of his law firm's corporate clients by, inter alia, convincing his law firm to replace its existing advertising agency with Flowerson Holdings, Inc., which was secretly owned and controlled by Cvjeticanin, and then billing the clients for hundreds of thousands of

2

dollars' worth of advertising placements that Flowerson and Cvjeticanin never placed. On June 29, 2015, the jury found Cvjeticanin guilty on all nine counts of mail fraud.

The District Court denied Cvjeticanin's motion for new trial, among other post-trial motions, and we affirmed. United States v. Cvjeticanin, 704 F. App'x 89, 94 (3d Cir. 2017), cert. denied, 138 S. Ct. 939 (2018), reh'g denied, 138 S. Ct. 1347 (2018).

In June 2018, Cvjeticanin moved again for a new trial in two separate motions, which the District Court denied, for the reasons set forth in the court's March 6, 2019 Memorandum Opinion. This timely appeal followed.

## II.[1]

Proceeding pro se, Cvjeticanin challenges the District Court's denial of his two motions for a new trial on numerous distinct and overlapping grounds. Before discussing the merits of Cvjeticanin's motions, we first explain why many of the claims pressed in Cvjeticanin's second motion were untimely filed and why we will affirm the District Court's dismissal of the claims on that ground.

## A.

Rule 33 permits defendants to seek vacatur of judgment and the granting of a new trial where "the interest of justice so requires." Fed. R. Crim. P. 33(a). However, Rule 33 sets strict time limits for filing such motions, and the time to file depends entirely on whether the motion is "grounded on newly discovered evidence[.]" Fed. R. Crim. P. 33(b)(1). While motions based "on newly discovered evidence must be filed within 3

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.

years after the verdict or finding of guilty[,]" a "motion for a new trial grounded <u>on any reason other than newly discovered evidence</u> must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1)–(2) (emphasis added).

After his June 29, 2015 conviction, Cvjeticanin waited almost three years to file his two motions for new trial. Thus, while both motions were potentially timely to the extent they were "grounded on newly discovered evidence[,]" the time to file on any other ground had long since elapsed. On appeal, Cvjeticanin contends for the first time that <u>all</u> of his claims involve newly discovery evidence. But this is rewriting history. Cvjeticanin's own second motion for new trial makes clear that it sought to raise a plethora of issues that were not based on newly discovered evidence. For example, while Cvjeticanin characterized the first motion as having been "exclusively based on newly found evidence and newly found perjuries[,]" he described the second motion by contrast as being "primarily based on due process concerns, particularly [the] Government's known introduction of perjured testimonies and various Brady violations." Supplemental Appendix ("SA") 920. To the extent that the second motion is not also "exclusively" based on newly discovered evidence, it is untimely by almost three years.

The second motion identifies thirteen separate grounds for a new trial, including eight alleged instances in which the Government "knowingly solicited or introduced . . . false and perjured testimonies" as well as five claimed <u>Brady</u> violations. SA 922.

Seven of the bases identified by Cvjeticanin lack any remotely credible explanation as to how or why they constitute newly discovered evidence and are thus

4

time-barred under Rule 33(b)(2).[2]  For example, Cvjeticanin challenges the Government's failure to turn over impeachment material of a Government witness consisting of a publicly-available newspaper article that was originally posted online in December 2014—months before trial began—with no explanation whatsoever as to how the information constitutes newly discovered evidence.

We will therefore affirm the dismissal of these new trial claims for that reason.

## B.

We now turn to the remaining claims raised by Cvjeticanin in both motions for new trial.  These include primarily claims that newly discovered evidence proves Cvjeticanin's lack of intent to defraud the companies, and evidence that Government witnesses perjured themselves, in some cases with the knowledge of the Government.

---

[2] These include the following claims:
- "Government Knowingly Solicited Mr. Weinberg's False Testimony Regarding Computer World Magazine Advertisements[.]"  SA 941.
- "Government Solicited and Then Failed to Correct Steven Weinberg's Perjured Testimony Regarding His Knowledge Concerning Flowerson's Existence[.]"  SA 955.
- "Government Knowingly Suppressed The Information That The Law Firm Of Wildes & Weinberg Changed Its Computer Servers In 2004 And Consequently Lost Its Ability To Produce Copies Of Critically Important 2002 And 2003 EMAILS[.]"  SA 959.
- "Government . . . Suppressed . . . Information That, One Year Prior to The Trial, The Government's Lead Investigatory Agent . . . Was Arrested[.]"  SA 962.
- "Government . . . Suppressed . . . Original And/Or Copies of Advertisements Voluntarily Provided To The Government By The Defendant[.]"  SA 964.
- "Government . . . Suppressed Information From The Defense Regarding Any Aspects Of The Broadridge Investigation[.]"  SA 966.
- "Government . . . Suppressed Information . . . That The Chain Of Evidence Was Irretrievably Broken[.]"  SA 969.

"We review the District Court's denial of a motion for a new trial for abuse of discretion." United States v. Schneider, 801 F.3d 186, 201 (3d Cir. 2015). Where a Rule 33 motion is based on newly discovered evidence, the movant shoulders a "heavy burden," United States v. Brown, 595 F.3d 498, 511 (3d Cir. 2010), of proving five elements:

> (a) [T]he evidence must be in fact newly discovered, i.e.[,] discovered since trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

Schneider, 801 F.3d at 201–02 (quoting United States v. Quiles, 618 F.3d 383, 388–89 (3d Cir. 2010) (quotation marks omitted)).

The District Court concluded that Cvjeticanin's non-time-barred claims in the first motion failed to satisfy three of these prongs, determining that Cvjeticanin (1) failed to establish that the evidence was newly discovered, (2) failed to demonstrate that his trial counsel could not have discovered the evidence sooner with due diligence, and that (3) the evidence was not of such a nature that it would probably produce an acquittal at trial.[3]

Because the District Court did not abuse its discretion in denying Cvjeticanin's motions for new trial, we will affirm. While Cvjeticanin describes his (purportedly) newly-discovered evidence as exculpatory, we agree with the District Court that it was not of such nature as to probably produce an acquittal at trial. For example, Cvjeticanin

---

[3] Similarly, the District Court concluded that even putting aside the timeliness of Cvjeticanin's claims in the second motion, his arguments lacked merit.

contended in his first motion that his October 13, 2003 email to an ADP employee "clearly disclos[ed] that Flowerson [wa]s his (own) advertising agency[,]" therefore "clearly proving Government witnesses knowingly committed perjury which is both material and central to the Government's case[.]" SA 826–27. Similarly, Cvjeticanin maintained that because he referred to Flowerson in another email as "my agency[,]" he had "openly disclos[ed] his ownership and control over the Flowerson agency" to ADP. SA 827. Those characterizations of the emails are, to put it mildly, a stretch. Because businesses, including law firms, often have their own preferred vendors which they use by default unless a client prefers another option, Cvjeticanin's references to "my ad agency[,]" SA 891–92, were ambiguous at best and cannot be said to have "clearly" or "openly" disclosed anything about Cvjeticanin's secret interest in Flowerson.

Further, while Cvjeticanin believes the "newly discovered evidence" cited in his second motion to be exculpatory, the evidence that he believes undermines the trial testimony of Government witnesses[4] is merely impeachment evidence that leaves

---

[4] For example, the following:
- "Government . . . Solicited Steven Weinberg's False Testimony That He . . . Checked 'All' Advertisements In Various Public Libraries[.]" SA 925.
- "Government . . . Solicited Steven Weinberg's False Trial Testimony That ALL Applications Filed By The Defendant Were Fraudulent[.]" SA 933.
- "Government . . . Solicited Steven Weinberg's False Testimony That He Checked 2012 Star Ledger Advertisements[.]" SA 939.
- "Government . . . Solicited Steven Weinberg's False Testimony Regarding The Indictment Count Nine – Oleksii Prokopchuk Case[.]" SA 944.
- "Government . . . Solicited . . . Agent Patel's False . . . Testimony That He Checked And Reviewed 'Hundreds Of Newspapers' and 'A Whole Bunch Of Things[.]'" SA 949.

7

undisturbed the inculpatory, recorded statements made by Cvjeticanin to Steven Weinberg, his former employer. Accordingly, and in the context of the trial evidence considered by the District Court as a whole, this impeachment material is not "of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal," Schneider, 801 F.3d at 202. Because none of the newly-discovered evidence described by Cvjeticanin meets this standard, the District Court did not abuse its discretion in denying Cvjeticanin's motions for new trial.

III.

For these reasons, we will affirm the District Court's order denying Cvjeticanin's motions for new trial.

---

- "Government Solicited . . . False Testimony Of Steven Weinberg That He Filed 100 Applications And Personally Paid For The New Advertisements[.]" SA 952.